IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| HAROLD RICHARDSON, | ) | **FOR PUBLICATION** |
| | ) | |
| Petitioner/Appellee, | ) | **Filed: December 28. 1995** |
| | ) | |
| vs. | ) | Davidson Chancery |
| | ) | |
| TENNESSEE BOARD OF | ) | Hon. C. Allen High, Chancellor |
| DENTISTRY, | ) | |
| | ) | No. 01S01-9502-CH-00027 |
| Respondent/Appellant. | ) | |

For Appellant:

Charles W. Burson
Attorney General & Reporter

Michael E. Moore
Solicitor General

Sue A. Shelton
Assistant Attorney General
Nashville, TN

For Appellee:

Michael M. Castellarin
Moody, Whitfield &
    Castellarin
Nashville, TN

**O P I N I O N**

JUDGMENT OF COURT OF APPEALS          WHITE, J.
REVERSED & CASE REMANDED
TO TENNESSEE BOARD OF DENTISTRY

At issue in this appeal by the Board of Dentistry is the validity and constitutionality of a proposed civil penalty against Harold Richardson for practicing dentistry and operating a dental clinic without a license. Also called into question is the authority of the Davidson County Chancery Court to resolve, on judicial review of an administrative order, constitutional issues that were not addressed in the administrative order. For the reasons that follow, we hold that the Chancery Court has jurisdiction to consider constitutional issues not addressed in the administrative proceeding. As a result, the Chancery Court's resolution of those issues in the first Chancery Court proceeding from which Richardson did not appeal, bars consideration of those issues. The judgment of the Court of Appeals is, therefore, reversed, and this matter is remanded to the Board of Dentistry for further proceedings.

# I

In 1989, the General Assembly enacted Tennessee Code Annotated Section 63-1-134 authorizing health related boards to assess civil penalties against unlicensed practitioners in health related professions. The legislation required each board to establish minimum and maximum civil penalties which could be assessed. The Tennessee Board of Dentistry, a state administrative board responsible for licensing, regulating, and disciplining dentistry practitioners in Tennessee under Tennessee Code Annotated Sections 63-5-101, et seq., established a "Schedule of Civil Penalties" which became effective on March 15, 1990. See Rules 0460-14-1-.01, -.02. -.03, Rules of Tennessee Board of Dentistry, Chapter 0460-14-1, "Civil Penalties."

2

On June 26, 1990, the Board served Richardson with a Notice of Charges and Memorandum of Civil Penalty Assessment charging him with practicing dentistry and with operating a dental clinic without a license in violation of Tennessee Code Annotated Sections 63-5-107 and 63-5-121.[1] The notice alleged that Richardson, who did not hold a license to practice dentistry in Tennessee, had since 1986, owned and operated the Budget Dental Laboratory and the Madison Dental Center in Nashville, Tennessee. The notice charged fifty-seven consecutive violations of owning and operating a dental practice occurring between March 15, 1990 and June 8, 1990 and at least ten acts of practicing dentistry. For ownership of the dental practice for fifty-seven days and for the ten incidents of practicing dentistry without a license, the Board sought to impose the maximum penalty of $38,500.[2] The Board of Dentistry set a contested case hearing for September 21, 1990.

On August 6, 1990, Richardson filed a Petition for Declaratory Order with the Board raising numerous state and federal constitutional

_____

[1]**63-5-107. License requirement. --** (a)  It is unlawful for any person to practice dentistry, a specialty in dentistry or dental hygiene in this state, except those who are now licensed or certified as such pursuant to law and those who may hereafter be licensed or certified and registered pursuant to this chapter.  Tenn. Code Ann. § 63-5-107(a) (1995 Supp.)

 **63-5-121.  Dental practice to be owned by dentist.** -- Except where dental services are regularly made available to employees by their employer, or where dental services are being provided by an official agency of the state government, or any subdivision, any nonprofit organization, hospital or any health maintenance organization, it is unlawful:
  . . .
        (2)  For an owner of an active dental practice to be other than a dentist duly licensed to practice in this state.  Tenn. Code Ann. § 63-5-121(2) (1990 Repl.).

[2]The maximum penalty for owning the dental practice was $500 per day.  The maximum penalty for practicing without license was $1,000 per day.

challenges.[3]  See  Tenn. Code Ann. §§ 4-5-223 – -24 (1991 Repl.) .  He

attacked the constitutionality of Section 63-1-134, the civil penalty

assessment statute, on several grounds.[4]  Since the statute punished by civil

penalty the same acts made criminal by the criminal code, Richardson

challenged the authority of the Board, a part of the executive rather than the

judicial branch, to hear the case, alleging that the procedure would violate

the separation of powers doctrine.  He challenged the statute on its face as

being violative of due process in its vagueness and its denial of a jury trial

since it assessed a fine in excess of $50.  He also questioned whether the

statute authorized the Board to fine or punish a private citizen who is not

and has never been a license holder.

---

[3]Richardson also filed a Motion to Dismiss which was answered, but not ruled upon at this        juncture.

[4]**63-1-134.  Penalty for violation of statute, rule or order. -- Recovery. --** (a)  With
respect to any person required to be licensed, permitted or authorized by any board,
commission or agency attached to the division of health related boards, each respective
board, commission or agency may assess a civil penalty against such person in an
amount          not to exceed one thousand dollars ($1,000) for each separate violation of a
statute, rule          or order pertaining to such board, commission or agency.  Each day of
continued          violation constitutes a separate violation.
> (b)  Each board, commission or agency shall by rule establish a schedule
designating the minimum and maximum civil penalties which may be assessed under this
section.  In assessing civil penalties, the following factors may be considered:
>> (1)  Whether the amount imposed will be a substantial economic deterrent
>> to the violator;
>> (2)  The circumstances leading to the violation;
>> (3)  The severity of the violation and the risk of harm to the public;
>> (4)  The economic benefits gained by the violator as a result of
>> noncompliance; and
>> (5)   The interest of the public.
> (c)        (1)   Civil penalties assessed pursuant to this section shall become final
thirty (30) days after the date a final order of assessment is served.
>> (2)    If the violator fails to pay an assessment when it becomes final, the
division may apply to the appropriate court for a judgment and seek execution of such
judgment.
>> (3)   Jurisdiction for recovery of such penalties shall be in the chancery
court of Davidson County, or the chancery court of the county in which all or part of the
violations occurred.
> (d)  All sums recovered pursuant to this section shall be paid into the state
treasury.

Tenn. Code Ann. § 63-1-134 (1990 Repl.)

4

On November 28, 1990, the Board convened a hearing to consider Richardson's Petition for a Declaratory Order. The Secretary of State assigned an Administrative Law Judge to make procedural and evidentiary rulings and to resolve questions of law. The judge ruled that the Board was not authorized to consider the arguments on the constitutionality of the statute or the arguments that the statute as applied was unconstitutional, but was to consider a single issue: whether the statute authorized the assessment of a civil penalty against persons that are required to be, but are not, licensed.

In its Declaratory Order filed on December 28, 1990, the Board answered the question affirmatively. Specifically, the Board held that (1) it was without jurisdiction to consider federal or state constitutional challenges to the statute or its application; (2) the statute applies to persons required to be licensed by the Board to practice dentistry, regardless of whether they are licensed; and (3) in the event the allegations against Richardson were established, civil penalties could be assessed.

Richardson sought judicial review of the Declaratory Order in the Davidson County Chancery Court. His Petition for Review raised the constitutional challenges to the statute and its application and questioned the authority of the Board to assess a civil penalty against an unlicensed citizen. Additionally, the petition attacked the administrative law judge's ruling prohibiting the Board from considering the constitutional issues as arbitrary, capricious, and illegal.

After allowing briefing and oral argument, the chancellor issued an order affirming the Board action. The chancellor defined the issue before the court as "whether the order of the Board is in violation of constitutional provisions, arbitrary, capricious, illegal or in excess of statutory authority." The chancellor found that the statute authorized criminal and civil sanctions and that, in this case, the Board was pursuing a civil rather than a criminal remedy. Therefore, there were no constitutional violations. Additionally, the chancellor found that the Board was authorized to assess a civil penalty against an unlicensed person. Finally, the chancellor found no basis for Richardson's claim that the Board action was arbitrary, capricious, illegal, or in excess of statutory authority.

Richardson sought first an interlocutory appeal. The chancellor denied the motion finding his order to be a final order, not an interlocutory order. Next, Richardson sought an extraordinary appeal which was denied by the Court of Appeals.

After filing his Petition for a Declaratory Order, but prior to the resolution of those issues in the Davidson County Chancery Court, Richardson filed a Motion to Dismiss with the Board restating his constitutional challenges.[5] This motion was still pending when the assistant general counsel for the State of Tennessee served a Request for Admissions. The request sought admissions which would have established that

_____

[5]On October 7, 1992, Richardson amended his Motion to Dismiss based on State ex rel. Town of South Carthage v. Barrett, 840 S.W.2d 895 (Tenn. 1992). He argued that the Board lacked the constitutional qualifications set forth in Article VI, Section 4 and, therefore, could not interpret or enforce the criminal law.

Richardson owned a dental practice and had practiced dentistry without a license at the times alleged in the notice. Shortly thereafter, the state filed a Motion in Limine asking that Richardson be precluded from arguing constitutional issues or from asserting his privilege against self-incrimination. Eventually, the state filed a Motion to Compel Discovery.

In October 1992, a second administrative law judge presided at a conference concerning the pending motions. After considering argument, the administrative law judge denied the Motion to Dismiss and granted both the Motion to Compel Discovery and the Motion in Limine. The judge found that the Board was not exercising concurrent jurisdiction with a criminal court in assessing a civil penalty and that the Board was not authorized to rule on constitutional issues. As to Richardson's privilege against self-incrimination, the judge deemed it inapplicable since the statute of limitations had expired on any possible criminal liability and since the Board was seeking only a civil penalty.[6]

Richardson appealed a second time to the Davidson County Chancery Court. In the Petition for Review, Richardson requested the reversal of the administrative law judge's order and a dismissal of the charges against him. The state defended on the basis that Richardson's claims were barred by res judicata or collateral estoppel as a result of the

---

[6]Violation of the licensing statutes is a Class B misdemeanor. Tenn Code Ann. §§ 63-1-123 & 63-5-128(a)(1990 Repl. & 1995 Supp.). Misdemeanors are subject to a twelve month statute of limitations. Tenn Code Ann. § 40-2-102 (1990 Repl.). The Notice of Charges set the date of the last offense as June 8, 1990. The time for filing criminal charges for the conduct listed in the Board's notice expired on June 9, 1991, more than a year before the state served its Request for Admissions.

7

first chancery proceeding and requested a supplementation of the record with the former record which was ultimately granted.

After hearing argument, the chancellor held that the constitutional issues had been determined in the first chancery case and affirmed the order of the administrative law judge in full without discussion of Richardson's self-incrimination claim. This time, Richardson appealed the Chancery Court's judgment to the Court of Appeals pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure.

In the Court of Appeals, Richardson raised nine issues including the constitutional challenges to the Board's authority, the self-incrimination issue, the Board's statutory authority to assess a penalty, the Board's refusal to hear argument concerning the proper interpretation of Section 63-1-134, and the supplementation of the record with that from the prior chancery proceeding. The state argued that Richardson was barred from raising the constitutional issues because he had not appealed the prior Chancery Court order.

The appellate court held that the record in the prior chancery proceeding was properly supplemented in support of the state's defense. Nonetheless, the court rejected the defense since it found that the chancery ruling on the constitutional issues was "without appropriate pleading . . . , coram non judice and void." The court held that only the portion of the judgment pertaining to the statute's applicability to unlicensed persons was valid. Finally, the court held that Tennessee Code Annotated Section 63-1-

134 is unconstitutional to the extent it authorizes any board to assess a civil penalty for acts otherwise declared to be criminal offenses. Therefore, the court reversed and vacated the Board's actions, pretermitted all other issues, and dismissed the charges.

## II

In the appeal before us, the state raises two issues:

1. whether the Board of Dentistry's proposed assessment of civil penalties for conduct also declared to be a criminal offense is an unconstitutional exercise of administrative authority; and

2. whether the Davidson County Chancery Court is authorized under the Uniform Administrative Procedures Act to resolve constitutional issues not addressed in the administrative order under review.[7]

Our conclusion on the second issue is dispositive of this case and removes the necessity of addressing the first issue. Since the resolution of this case ripens it for a determination on the merits, we address the self-incrimination issue as well.

## A.

In addressing the appropriateness of the Chancery Court's first order disposing of Richardson's constitutional challenges, we consider first to what extent an administrative body in a contested case has the authority to resolve constitutional questions. The general rule is that an

---

[7]Richardson argues that the state may not rely on its res judicata or collateral estoppel defense because the issue was not affirmatively raised in this appeal. We disagree. Although the words res judicata or collateral estoppel are not used in the statement of the issues, it is implicit in the Court of Appeals' disposition. Further, it was argued at both the chancery and appellate levels.

administrative agency may not determine constitutional issues. An agency is not authorized to consider or question the constitutionality of a legislative act; nor may it declare unconstitutional the statutes which it was created to administer or enforce. This recognition of the limited authority of agencies to resolve constitutional issues has been widely recognized. See e.g., Downen v. Warner, 481 F.2d 642, 643 (9th Cir. 1973)(resolving claim based on constitutional right is inappropriate for an administrative board); Alleghany Corp. v. Pomeroy, 698 F. Supp. 809, 813-14 (D.C.N.D. 1990), rev'd on other grounds, 898 F.2d 1314 (8th Cir. 1990)(agency without power to adjudicate constitutional issues); Key Haven v. Board of Trustees of the Internal Impr'mt. Trust Fund, 427 So. 2d 153 (Fla. 1982)(forum for consideration of constitutional question was in court upon judicial review); Mobil Oil Corp. v. City of Rocky River, 309 N.E. 2d 900 (Ohio 1974)(constitutionality of zoning ordinance is matter for the court); Dow Jones & Co. v. State ex rel. Oklahoma Tax Comm'n, 787 P.2d 843 (Okla. 1990)(commissioner properly refused to address constitutional issues); Belco Petroleum Corp. v. State Bd. of Equalization, 587 P.2d 204, 218 (Wyo. 1978)(agency does not determine facial constitutionality of statute or constitutionality of its application). See also 73 C.J.S., "Public Administrative Law and Procedure," § 65 at 536; 1 Am. Jur.2d, "Administrative Law," § 185 at 989-90.

These limits on the authority of administrative agencies to resolve constitutional questions are based upon the fundamental constitutional principle of separation of powers. See State ex rel. Town of South Carthage v. Barrett, 840 S.W.2d 895, 897 (Tenn. 1992). The powers

of government, divided into the legislative, executive, and judicial branches, are separate and divisible. The legislative branch has the authority to make, alter, and repeal the law; the executive branch administers and enforces the law; and the judicial branch has the authority to interpret and apply the law. State v. Brackett, 869 S.W.2d 936, 939 (Tenn. Crim. App.), perm. to appeal denied, (Tenn.1993) ; Tenn. Const. Art. II, §§ 1, 2. Since the United States Supreme Court decision in Marbury v. Madison, 1 Cranch (5 U.S.) 137 (1803), it has been the sole obligation of the judiciary to interpret the law and determine the constitutionality of actions taken by the other two branches of government. Tennessee Small School Sys. v. McWherter, 851 S.W.2d 139, 148 (Tenn. 1993). The Tennessee Constitution forbids an encroachment by one department upon the powers or functions of another. Tenn. Const. Art. II, § 2; State v. Brackett, 869 S.W.2d at 939. Thus, a legislative action vesting executive branch agencies with the authority to determine the constitutionality of statutes would violate the separation of powers doctrine. See Williams v. Carr, 404 S.W.2d 522 (Tenn. 1966); LaFever v. Ware, 365 S.W.2d 44, 47 (Tenn. 1963); Peay v. Nolan, 7 S.W.2d 815, 816 (Tenn. 1928).

While the doctrine of separation of powers is fundamental to our form of government, it is not absolute. State v. Brackett, 869 S.W.2d at 939. It does not require that administrative agencies never consider the constitutionality of an administrative action. A careful examination of the cases in Tennessee and in other states demonstrates that an absolute mandate against administrative resolution of constitutional issues is overbroad. Most states, including Tennessee, have recognized that,

11

although the general rule is that agencies do not have the authority to decide constitutional issues, agencies must consider and apply constitutional principles in determining procedures and rendering decisions in contested cases. See e.g. Flint River Mills v. Henry, 216 S.E.2d 895, 896-97 (Ga. 1975)(officer of board is powerless to declare a statute unconstitutional); City of Joplin v. Industrial Comm'n of Missouri, 329 S.W.2d 687, 689 (Mo. 1959)(en banc) (administrative agencies have no authority to consider constitutionality of legislation); First Bank of Buffalo v. Conrad, 350 N.W. 2d 580, 585 (N.D. 1984)(agency must presume statute is valid until a judicial determination to the contrary); Johnson v. Elkin, 263 N.W. 2d 123, 126 (N.D. 1978)(general rule is that agencies have no authority to rule upon constitutionality of their operating statutes).

For example, in a proceeding before the Tennessee Civil Service Commission, the Commission, without objection, heard and resolved the issue of whether a party could assert a privilege against self-incrimination before the Commission. England v. Civil Service Commission of Metro Gov't of Nashville & Davidson County, 617 S.W.2d 135 (Tenn. App. ), cert. denied, (Tenn.1981). The Commission's authority was not challenged and its determination that the privilege was not available was upheld on appeal. Id. at 140. Conversely, in Goodwin v. Metropolitan Board of Health, the Court of Appeals stated: "a non-judicial board has no power or authority to make constitutional rulings." Goodwin v. Metropolitan Board of Health, 656 S.W.2d 383, 387 (Tenn. App.), perm. to appeal denied, (Tenn. 1983).

12

A series of cases have spawned confusion on the applicable Tennessee rule.  See Watts v. Burkhart, 854 F.2d 839 (6th Cir. 1988)(case implying that courts, not agencies, must determine constitutional issues in Tennessee);  L.L. Bean, Inc. v. Bracey, 817 S.W.2d 292 (Tenn. 1991)(administrative agencies have the authority to consider the constitutionality of a statute);  Crawford v. Tennessee Consolidated Retirement System, 732 S.W.2d 293, 297 (Tenn. App.), perm. to appeal denied, (Tenn. 1987)("only a court may pronounce a declaratory judgment on the subject of the constitutionality of a law . . . .").  This unfortunate confusion has arisen primarily because our courts have seldom differentiated between the various kinds of constitutional issues that may be raised in administrative proceedings.  Given the array of complex constitutional issues that surround agency law and the procedural requirements of due process, it is unrealistically simplistic and unworkable to state a general rule that administrative bodies either have or do not have the authority to consider constitutional questions.  Courts must delineate in a principled manner between those issues that are within the purview of an administrative body with limited authority and those that are solely within the jurisdiction of the judicial branch.  The former include procedural constitutional issues that may arise in the context of a contested case.  The latter involves constitutional challenges to the statutes creating the agency and defining its subject matter and authority.

Our examination of Tennessee case law discloses that three types of constitutional issues arise in contested administrative hearings. The first are those that challenge the facial constitutionality of a statute

authorizing an agency to act or a rule adopted pursuant to a statute. The second challenges the actions of an agency in applying a rule or statute. The third challenges the constitutionality of the procedures employed by the agency. Once the differences in the issues are noted, the seemingly inconsistent approaches disappear.

Tennessee courts generally hold that administrative agencies and boards are not authorized to rule on facial constitutional challenges to statutes or rules. Goodwin v. Metropolitan Bd. of Health, 656 S.W.2d 383 (Tenn. App.), perm. to appeal denied, (Tenn. 1983)(constitutionality of Board of Health regulations). Courts, moreover, have entertained these constitutional challenges in cases in which the issues were not addressed at the agency level. See, e.g., Plasti-Line, Inc. v. Tennessee Human Rights Comm'n, et al., 746 S.W.2d 691 (Tenn. 1988)(administrative action pending when declaratory judgment filed but no suggestion that agency should resolve issue); Pharr v. Nashville, C., & St. L. Ry., 208 S.W.2d 1013, 1017 (Tenn. 1948); see also Watts v. Burkhart, 854 F.2d 839 (6th Cir. 1988).

In cases in which a party challenges the application of a statute in a given situation, the Tennessee courts have acknowledged the agency's authority to resolve the issue before submitting the matter to judicial review. See L.L. Bean, Inc. v. Bracey, 817 S.W.2d 292 (Tenn. 1991)(challenge to applicability of sales tax to catalog sales); Crawford v. Tennessee Consolidated Retirement System, 732 S.W.2d 292 (Tenn. App.), perm. to appeal denied, (Tenn. 1987)(applicability of statute and agency rule to plaintiffs' retirement rights). Courts have also implicitly recognized an

14

agency's authority to resolve constitutional questions involving procedural matters. See England v. Civil Service Comm'n of Metro Gov't of Nashville & Davidson County, 617 S.W.2d 135 (Tenn. App.), cert. denied, (Tenn. 1981) (privilege against self-incrimination).

Thus, we conclude that whether an agency can resolve constitutional issues raised in a contested case proceeding depends on the nature of the constitutional issue. The applicable rules may be summarized as follows:

(1) Facial Constitutionality of a Statute

The facial constitutionality of a statute may not be determined by an administrative tribunal in an administrative proceeding. An administrative agency is a creation of the legislature. While it may have judicial characteristics and may be required to perform quasi-judicial functions, an agency is not part of the judicial branch of government. Plasti-Line, Inc. v. Human Rights Comm'n, et al., 746 S.W.2d 691, 694 (Tenn. 1988). As a result, the legislature may not confer upon an agency the power to determine the constitutionality of a statute. Hoover Motor Exp. Co., Inc. v. Railroad & Public Utilities Comm'n, 261 S.W.2d 233, 238 (Tenn. 1953); Pharr v. Nashville, C., & St. L. Ry., 208 S.W.2d 1013, 1017 (Tenn. 1948). Nor may an agency assume that power. That power rests with the judiciary. Tennessee Small School Sys. v. McWherter, 851 S.W.2d 139, 148 (Tenn. 1993). To vest an agency with the authority to determine the constitutionality of the legislation empowering the agency to act would violate the doctrine of the separation of powers. Tenn. Const. Art. II, §§ 1 & 2. Therefore, we reiterate that an administrative agency, board,

commission or administrative law judge acting in a contested case hearing has no authority to resolve facial challenges to the constitutionality of a statute.

(2)  Unconstitutional Applications of a Statute or Rule

When the focus of an aggrieved party's claim is an "as applied" challenge to the constitutionality of a statute or any challenge to the constitutionality of an agency rule,[8] the agency may initially rule on the challenge.  The policy behind this general rule is to allow the agency the opportunity to correct any error it has made in drafting an unconstitutional rule or in enforcing a constitutional mandate in an unconstitutional manner. Upon discovery, an agency may modify its rule to comport with constitutional requirements.  L.L. Bean, Inc. v. Bracey, 817 S.W.2d 292 (Tenn. 1991); Crawford v. Tennessee Consolidated Retirement System, 732 S.W.2d 292 (Tenn. App.), perm. to appeal denied, (Tenn. 1987).  This rule comports with the provision of the Administrative Procedures Act.  Tenn. Code Ann. § 4-5-223 (1991 Repl.).  Therefore, an administrative body in a contested case proceeding may resolve questions of the unconstitutional application of a statute to the specific circumstances of the case or the constitutionality of a rule that the agency has adopted.

(3)  Constitutional Challenges to Agency Procedure

---

[8]An agency rule is, in essence, an application of the statutes which govern the agency.  An unconstitutional rule is an unconstitutional application of an otherwise constitutional statute.

Similarly, an agency may address a claim that an agency's procedure is constitutionally deficient. In contested case proceedings, administrative law judges, boards, and commissions are bound by the procedural due process requirements imposed by the Tennessee and United States constitutions. Full consideration of constitutional procedural issues by the agency will assure that the responsible agency has a full opportunity to reach a considered decision on a complete record after a fair proceeding.

Our courts have long recognized the wisdom of allowing a trial court to correct errors in the conduct of a trial before submitting the case for appellate review. To require administrative tribunals to ignore procedural issues and delay correction until judicial review in the chancery court would diminish the effectiveness of administrative proceedings and cause a considerable waste of effort on the part of the parties and the tribunal. Therefore, we conclude that an agency has the authority in a contested case proceeding to consider procedural constitutional issues and conform its procedures to constitutional requirements.

To summarize, administrative agencies have no authority to determine the facial constitutionality of a statute. They are authorized, however, to determine the constitutionality of the application of statutes or rules and of the procedures employed. The agency resolution of those issues is subject to judicial review in the chancery court. Tenn. Code Ann. § 4-5-322 (1995 Supp.).

B

Next, we must consider whether the Davidson County Chancery Court was authorized to resolve constitutional issues which were raised but not resolved in a contested case proceeding.

Tennessee's Administrative Procedure Act provides two methods for obtaining judicial determination of constitutional issues. First, any person aggrieved by a final decision in a contested case before an administrative tribunal is entitled to judicial review in the Davidson County Chancery Court. Tenn. Code Ann. § 4-5-322(a)(1)(1991 Repl. & 1995 Supp. amend. eff. 7-1-95). Preliminary, procedural, and intermediate rulings may be reviewed immediately if the review of a final ruling would not provide an adequate remedy. Id. The Chancery Court review is without a jury and is confined to the record, unless procedural irregularities not shown in the record are alleged. Tenn. Code Ann. § 4-5-322(g)(1991 Repl. & 1995 Supp.). In that situation, the Chancery Court may take proof. Id. After review, the Chancery Court may affirm or remand for further proceedings. If the administrative findings, inferences, conclusions, or decisions (1) violate constitutional or statutory provisions; (2) exceed the agency's statutory authority; (3) were made "upon unlawful procedure;" or (4) are arbitrary, capricious, or an abuse of discretion, and prejudice the party, the Chancery Court may reverse or modify the decision. Tenn. Code Ann. § 4-5-322(h)(1991 Repl. & 1995 Supp.).

The Administrative Procedures Act also allows an "affected person" to petition the Davidson County Chancery Court for a declaratory judgment regarding the legal validity of a state, rule, or agency order in

18

limited circumstances. A declaratory judgment may be sought if the agency has, upon petition by an affected person, refused to issue a declaratory order. Tenn. Code Ann. §§ 4-5-223 & -224 (1991 Repl.). If the person has first sought a declaratory order in the agency, the agency has refused to issue a declaratory order, and the statute, rule, or order, or its application interferes with, impairs, or threatens to interfere with or impair the person's rights, the Chancery Court may enter declaratory judgment. Id. The Chancery Court may declare a statute or rule invalid only if it "violates constitutional provisions, exceeds the statutory authority of the agency, was adopted without compliance with the rulemaking procedures . . . or otherwise violates state or federal law." Id. at § -224(c).

The declaratory judgment and judicial review provisions do not require that constitutional issues be raised at the agency level. In fact, both Section 4-5-224 (declaratory judgments) and Section 4-5-322 (judicial review) direct the trial court to determine whether the agency's action or decision violated a constitutional provision or exceeded the agency's statutory authority. Implicit in the declaratory judgment procedure available when an agency refuses to issue a declaratory order is the recognition that some constitutional issues would be considered initially by the Chancery Court. Tenn. Code Ann. §§ 4-5-223(a)(2) – -224 (1991 Repl.). The judicial review provisions confine review to the record, but allow the court to take proof in circumstances in which the irregularities are not shown on the record. Tenn. Code Ann. § 4-5-223(g)(1991 Supp. & 1995 Supp.). The statutes clearly contemplate that, in a number of circumstances,

constitutional issues may be raised and addressed for the first time in chancery court.

To better illustrate the appropriate rules and procedures, we address each of the three types of constitutional issues separately:

(1)   Facial Unconstitutionality of a Statute

Since an administrative agency has no authority under Tennessee law to consider the constitutionality of a statute, the agency must refuse to address facial constitutional challenges raised in contested case proceedings.   Hearing challenges to issues which the agency cannot resolve may unduly prolong and complicate administrative proceedings.  We see no good reason to require that parties raise facial constitutional challenges before agencies which lack the power to resolve the issue.  The law should not require one to perform useless and futile acts.  See e.g. Watts v. Burkhart, 854 F.2d 839, 848 (6th 1988); Key Haven v. Board of Trustees of Internal Improvm't Trust Fund, 427 So. 2d 153, 157 (Fla. 1982); Duncan v. Missouri Bd. for Architects, 744 S.W.2d 524 (Mo. App. 1988); Johnson v. Elkin, 263 N.W.2d 123, 127 (N.D. 1978); Mobil Oil Corp. v. City of Rocky River, 309 N.E.2d 900 (Ohio 1974).

If a party in a contested case proceeding petitions an agency for a declaratory order, the agency should determine those issues which are within the scope of its authority or refuse to issue an order.  The party may seek judicial review of the resolved issues and of those issues that the agency refused or was without authority to consider.  In either circumstance,

the party may challenge the constitutionality of a statute regardless of whether it was raised at the agency level.

### (2) <u>Unconstitutional Application of a Statute or Rule</u>

A party's challenge to the application of a statute or the constitutionality of an agency rule may initially be considered and determined by the agency. This comports with the principles of judicial economy and allows correction of errors at the initial hearing level.

Notwithstanding these important policy considerations, the legislature specifically authorizes the chancery court to reverse or modify the agency decision if the party's rights have been prejudiced by a violation of constitutional or statutory provisions. Tenn. Code Ann. § 4-5-322(h)(1)(1991 Repl. & 1995 Supp.). This supports a conclusion that the issues need not be raised during the agency proceeding. In addition, practical considerations convince us that the failure to raise a constitutional challenge during an agency proceeding should not preclude the chancery court's consideration. First, agencies employ diverse procedures with varying degrees of formality. An administrative judge or hearing officer may, with the agreement of the parties, conduct all or part of the hearing by telephone, television, or other electronic means. Tenn. Code Ann. § 4-5-312 (1991 Repl.). The party charged may or may not be represented by counsel. In some instances, the fact that an agency has exceeded its authority may not be apparent until the agency has issued its final order. See <u>Pharr v. Nashville C. and St. L. Ry.</u>, 208 S.W.2d 1013 (Tenn. 1948)(order requiring railroad to move tracks violates separation of

21

powers). To prohibit a party from raising constitutional issues in the chancery court which were not addressed at the agency level could prevent an aggrieved party from having a full and fair judicial hearing on an alleged clear violation of a constitutional right.

Secondly, administrative agencies may be ill-equipped to rule on constitutional issues. Although agency personnel have considerable expertise on the subject matter which the legislature has delegated to the agency, board members and other agency fact-finders are less likely to have training in constitutional law sufficient to enable an appropriate resolution of the issues.

Finally, the importance of correctly resolving constitutional issues suggests that constitutional issues should rarely be foreclosed by procedural technicalities. Veach v. State, 491 S.W.2d 81, 83 (Tenn. 1973). Certainly, issues of constitutionality should not first surface on appeal, see Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1968), but the significant procedural and substantive differences between chancery court review of an agency decision under the Administrative Procedure Act and appeals from final judgments of trial courts under Rule 3, Tennessee Rules of Appellate Procedure requires a more flexible approach in the former.

Based on the plain language of the Administrative Procedures Act and the policy and practical principles discussed above, we hold that the failure to contest the constitutionality of a statute as applied or the constitutionality of an agency rule does not prevent a party from raising

those issues upon judicial review.  However, we note that in most instances, a party may save considerable time and expense by raising the issue through a declaratory order proceeding or other appropriate pleading.

### (3)  Constitutional Challenges to Agency Procedure

Constitutional challenges to agency procedure may include issues such as the right to counsel, the privilege against self-incrimination, and the right to procedural due process.  See England v. Civil Service Commission, 617 S.W.2d 135 (Tenn. App. ), cert. denied, (Tenn.1981) (privilege against self-incrimination).  Objection at the agency level will allow incorrect procedures to be eliminated thereby saving time and expense for the parties.  Nonetheless, the legislature clearly intended to allow procedural irregularities in contested case hearings to be addressed for the first time on judicial review.  Tenn. Code Ann. § 4-5-322(h)(3)(1991 Repl. & 1995 Repl.).  Review at the chancery court level ensures that constitutional issues are addressed by law-trained judges with the legal knowledge to resolve the issues.

In summation,  although an agency has no authority to determine the constitutionality of a statute, an agency may rule on constitutional challenges to the application of a statute, to a rule, and to procedures used in a contested case proceeding.  Nevertheless, the failure to raise these constitutional issues before the agency will not preclude a party in a contested case from raising the issue for the first time upon judicial review.

23

Parties to contested case proceedings may challenge the constitutionality of a statute or a rule, either facially or as applied, by seeking a declaratory order from the agency pursuant to Tennessee Code Annotated Section 4-5-223. If the agency refuses to rule on the issue, as it must if the challenge is to the facial constitutionality of a statute, then the party may petition the chancery court for a declaratory judgment pursuant to Section 4-5-224. If the agency issues a declaratory order, an aggrieved party may seek judicial review of the order in the Davidson County Chancery Court pursuant to Section 4-5-322. A final judgment of the chancery court may be appealed to the Tennessee Court of Appeals. Tenn. Code Ann. § 4-5-323 (1991 Repl.).

Parties may also raise constitutional issues through the judicial review of a final agency order or, when appropriate, through the review of an interlocutory order. Tenn. Code Ann. § 4-5-322 (1991 Repl. & 1995 Supp.). During chancery court review of a final agency order, parties may raise constitutional challenges to statutes or rules, challenges to the application of statutes or rules, and challenges to agency procedures, regardless of whether the issue was raised at the agency level. The chancery court may take further evidence or may order the agency to take the proof required in appropriate cases. Tenn. Code Ann. § 4-5-322(e), (g)(1991 Repl. & 1995 Supp.). Once again, parties may appeal to the Court of Appeals from the final order of the chancery court. Tenn. Code Ann. § 4-5-323 (1991 Repl.).

C

Having defined the scope of an agency's limited authority to resolve constitutional issues and of the chancery court's broad powers to consider those issues either in a petition for declaratory order or upon judicial review, we must now apply those principles to the facts in this case. In doing so, we conclude that both the Davidson County Chancery Court and the Board of Dentistry's fact-finding tribunals conformed to the principles delineated above.

Richardson petitioned the Board for a declaratory order on August 6, 1990, approximately six weeks before the scheduled hearing date. He raised broad constitutional challenges to the facial validity of Tennessee Code Annotated Section 63-1-134 and agency rule 0460-14-1.04. The gravamen of his constitutional issues was the agency's lack of authority to act. Since Richardson was charged with conduct that was made criminal by statute, he contended that an agency determination of his "guilt" would violate the principles of separation of power and due process. In addition, Richardson challenged whether the statute or rule applied to him, an unlicensed citizen.

The Board refused to address the constitutional issues finding that it was not authorized to resolve them. It did issue a declaratory order, however, stating that Section 63-1-134 applied to persons who should be licensed as well as those who are licensed and that civil penalties could be assessed against Richardson if the allegations were proven. Richardson petitioned for judicial review in the Chancery Court once again raising his

25

constitutional challenges to the agency's authority and to the application of the statute and rule to unlicensed persons.[9]

In the first case before it on judicial review, the Chancery Court addressed all of the issues raised in the petition including those constitutional issues not resolved by the agency. The chancellor's actions were proper. The administrative agency was not authorized to declare the challenged statute unconstitutional. If the chancellor was prohibited from determining the constitutionality of the statute as the Court of Appeals held, the party challenging the statute would have no available forum in which to raise the issue.[10]

The parties in this case briefed and argued the constitutional issues. The chancellor stated the issue as "whether the order of the Board is in violation of constitutional provisions, arbitrary, capricious, illegal or in excess of statutory authority." In the Memorandum and Order entered January 3, 1992, the chancellor found that:

> The statute authorizes the Board of
> Dentistry to assess a civil penalty against a person
> who should be, but is not, licensed by the Board.

---

[9]Richardson contended that Section 63-1-134 was unconstitutional on its face. Specifically, he alleged a violation of Article I, Section 8, Article II, Section 1, and Article VI, Section 14 of the Tennessee Constitution, due process under the 5th and 14th Amendments to the U.S. Constitution and the right to trial by jury under the 6th Amendment. In addition, he argued that Sections 63-1-134, 63-5-107 and 121 were void for vagueness and consequently, violative of due process.

[10]We are aware of the holding in Goodwin v. Metropolitan Board of Health, 656 S.W.2d 383, 387 (Tenn. App.), perm. to appeal denied, (Tenn. 1983), in which the Court of Appeals held that a chancery court could not hear an action for declaratory judgment simultaneously with one brought as a petition for writ of certiorari. Goodwin does not apply in this instance, however, because petitioner was seeking review under Section 4-5-322 of the Administrative Procedures Act which specifically gives a chancery court the authority to consider constitutional challenges to agency action.

> The State is pursuing only civil remedies at this time, so the Court finds no constitutional violations. Since the statute authorizes the Board to assess a civil penalty against an unlicensed person, the Board's order is not arbitrary, capricious, illegal or in excess of statutory authority.

Implicit in the chancellor's order is the holding that the matters before the Board were civil and not criminal in nature and, therefore, the Board was not acting in violation of any constitutional provisions or exceeding its statutory authority. The nature of this appeal does not require us to determine whether those findings were correct. Rather, we are concerned with whether that chancery court order was a final one, and, if so, whether certain determinations now form the basis for a res judicata or collateral estoppel defense.

The term "res judicata" is defined as a "[r]ule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action . . . . [T]o be applicable, it requires identity of cause of action, or person and parties to action, and of quality in persons for or against whom claim is made." Black's Law Dictionary 1172 (5th ed. 1979)(citations omitted). We have recently discussed the doctrine and its related counterpart, collateral estoppel, as follows:

> The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the

> former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

Goeke v. Woods, 777 S.W.2d 347, 349 (Tenn. 1989)(quoting from Massengil v. Scott, 738 S.W.2d 629, 631 (Tenn. 1987)). Res judicata and collateral estoppel apply only if the prior judgment concludes the rights of the parties on the merits. A. L. Kornman Co. v. Metropolitan Gov't of Nashville & Davidson County, 391 S.W.2d 633, 636 (Tenn. 1965). One defending on the basis of res judicata or collateral estoppel must demonstrate that 1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues. Scales v. Scales, 564 S.W.2d 667, 670 (Tenn. App. 1977), cert. denied, (Tenn. 1978). Both of these conditions are met in this case.[11]

Most cases interpreting what is meant by the term "final judgment" arise in the context of a Rule 3 appeal. Tenn. R. App. P. 3. In Tennessee, a judgment is final "when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." Saunders v. Metropolitan Gov't of Nashville & Davidson County, 383

---

[11]As noted in the quotation from Massengil, the doctrines of res judicata and collateral estoppel are very similar. Res judicata bars litigation if a second suit involves the same parties and the same cause of action that was determined in the first action. Collateral estoppel prevents identical parties from relitigating in a different action issues determined in a previous suit. Massengil v. Scott, 738 S.W.2d 629, 631 (Tenn. 1987) In this case, collateral estoppel bars the relitigation of issues determined in the previous chancery suit between these identical parties. However, res judicata is often used to mean "a matter adjudged; a thing judicially acted upon or decided." Black's Law Dictionary 1174 (5th ed. 1979). It is in this general sense that the term is used in this opinion.

S.W.2d 28, 31 (Tenn. 1964). An order denying a motion for summary judgment, for example, is not a final judgment because the entire suit remains for disposition. C.O. Christian & Sons Co., Inc. v. Nashville P.S. Hotel, Ltd. & Condel Const'n Co., Inc., 765 S.W.2d 754, 756 (Tenn. App. 1988), perm. to appeal denied, (Tenn. 1989)(quoting from In Re Estate of McCord, 661 S.W.2d 890, 891 (Tenn. App. 1983)). Likewise, the denial of a motion to dismiss does not end a lawsuit or constitute a final judgment. Id.

The chancellor's January 3, 1992, Memorandum and Order was the final judgment in the initial chancery proceedings. It conclusively determined all issues before the Chancery Court on their merits and left nothing for further judgment of that court. Just as the agency's declaratory order was a final order subject to judicial review in the Chancery Court, the Chancery Court's Memorandum and Order was a final order subject to appeal under Section 4-5-323. The judicial review of the agency decision was not a continuation of the agency proceeding, but was an original judicial review proceeding under Section 4-5-323 subject to review by the appellate courts.[12]

Richardson made various efforts to appeal the Chancery Court judgment but failed to comply with the appellate procedure specified in Section 4-5-323. That section provides:

---

[12]We agree that the wording of the order was infelicitous in that it finds no constitutional violations "at this time." However, those words are mere surplusage and in no way affect the finality of the Chancery Court's decision on the claims the parties had brought before it.

(a) An aggrieved party may obtain a review of any final judgment of the chancery court under this chapter by appeal to the court of appeals of Tennessee.

(b) The record certified to the chancery court and the record in the chancery court shall constitute the record in an appeal. Evidence taken in court pursuant to § 4-5-322(g) shall become a part of the record.

(c) The procedure on appeal shall be governed by the Tennessee Rules of Appellate Procedure.

Tenn. Code Ann. § 4-5-323 (1991 Repl.). Richardson did not comply with any of those requirements, and, therefore, the Chancery Court's Memorandum and Order is a final adjudication of the case.

The parties and the issues in the second Chancery Court proceeding, with one single exception, were identical to those in the first proceeding. The single nonidentical issue was raised in Richardson's amendment to his Motion to Dismiss which was filed several months after the original Chancery Court judgment. That amendment contested the Board's authority to act under Article VI, Section 4 of the Tennessee Constitution and under the principles enunciated in State ex el. v. Town of South Carthage v. Barrett, 840 S.W.2d 895 (Tenn. 1990). The administrative law judge denied the motion and granted the state's Motion to Compel and Motion in Limine based on the agency's position that it was seeking only civil penalties.

Richardson filed a Petition for Review in the Chancery Court raising the same constitutional issues he had raised in the first chancery proceeding, and additionally, the constitutional challenge based on Town of

<u>South Carthage</u>.  He also challenged the ruling on the state's Motion to Compel asserting that it deprived him of his privilege against self-incrimination.

The state argues that the "new" <u>Town of South Carthage</u> challenge to the agency's authority is not "new" at all.  We agree.  Richardson has contended from the outset that the Board has no authority to interpret or enforce criminal statutes.  In its final order in the first proceeding, the Chancery Court held that the Board of Dentistry was seeking only civil, and not criminal remedies, a procedure clearly within its authority.  The fact that Richardson has identified another argument to support his constitutional challenge does not alter the fact that the issue was resolved in the first chancery proceeding.  Between these parties, the resolution is final.

In the Memorandum and Order issued in the second suit, the chancellor wrote:

> In an earlier interlocutory[13] proceeding in this same matter, Docket No. 91-636-II, the petitioner sought relief from a declaratory order of the Board which held that he could be assessed these "civil penalties."  In that appeal, the petitioner made the same arguments he has made in this appeal; basically that the statute he is charged with violating are criminal statutes and he

---

[13]The trial court erred in referring to the first review as an interlocutory proceeding.  The statutes allowing a petition for a declaratory order at the agency level are not part of the contested case procedures.  In fact, when an affected person (not party) petitions an agency for a declaratory order "as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency,  the agency must convene a contested case hearing pursuant to the provisions of [the] chapter."  Tenn. Code Ann. § 4-5-223(a)(1) (1991 Supp.).  The agency's declaratory order was a final agency decision in a contested case proceeding.

> is entitled to Fifth Amendment Constitutional protection and the Board lacks Constitutional authority to conduct this hearing and enforce the statute. By Memorandum and Order entered January 3, 1992 in that matter, this Court concluded that this was not a criminal prosecution and it has not yet changed its mind.

The chancellor's first Memorandum and Order was a final order. The parties were identical, the issues, save one, were the same. Richardson failed to perfect an appeal from the chancellor's Memorandum and Order. The judgment is final. The Court of Appeals erred in holding that the constitutional challenges to agency authority were coram non judice. With the exception of one issue, we are barred from consideration of the constitutional issues.

## III

The single constitutional issue presented in the second chancery proceeding was whether Richardson's privilege against self-incrimination would be violated if he was compelled to answer incriminating Requests for Admission. The Board's order refused to recognize the privilege in the contested case proceeding because the statute of limitations had expired on any potential criminal violations. The order recited that if the criminal violations remained viable, the decision might have been different. The Chancery Court's Order affirming the Board action did not address the self-incrimination issue. The Court of Appeals' opinion dismissing the charges deemed a discussion of the issue "unnecessary." Because this matter will be remanded for further proceedings in which the privilege may again be asserted, we will address the issue.

32

The Fifth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution of the State of Tennessee guarantee that those accused of crimes may not be compelled to testify or give evidence against themselves.  U. S. Const. amend. V; Tenn. Const. Art. I § 9.  The scope of the privilege is comprehensive; Application of Gault, 387 U.S. 1, 47 (1967), its availability is not dependent upon the  type of proceeding in which the protection is invoked but on the nature of the testimony.

The privilege protects any disclosures which a witness might reasonably believe would be used in a criminal prosecution or which could lead to other evidence that might be so used.  Murphy v. Waterfront Commission, 378 U.S. 52, 94 (1964); State ex rel. Shriver v. Leech, 612 S.W.2d 454, 459 (Tenn.), cert. denied, 454 U.S. 836 (1981).  "The privilege can  be claimed in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory."  Murphy v. Waterfront Commission, 378 U.S. 52, 94 (1964); See In re Helvenston, 658 S.W.2d 99, 102 (Tenn. App.),  perm. to appeal denied, (Tenn. 1983);  State ex rel. Shriver v. Leech, 612 S.W.2d at 459.  Although the privilege is available in a civil suit, it does not protect  witnesses in circumstances in which the answer may subject them only to civil liabilities.  Zollicoffer v. Turney, 14 Tenn. (1 Yer.)  297, 300-301 (1834); Cook v. Corn, 1 Tenn. (1 Overt.) 340, 341 (1808)

Hence, the privilege is not available to Richardson.  The Notice of Charges alleges that Richardson's violations as occurred between March

15, 1990 and June 8, 1990. The violations alleged are of provisions of the chapter establishing and regulating the Division of Health Related Board and are Class B misdemeanors. Tenn. Code Ann. §§ 63-1-123(a), 63-5-128(a)(1990 Repl. & 1995 Supp.). The statute of limitations for the prosecution of misdemeanors is twelve months. Tenn. Code Ann. § 40-2-102 (1990 Repl.)

If reasonable grounds existed to believe that compelling Richardson's testimony would lead to a criminal prosecution, Richardson could assert the privilege against self-incrimination in the administrative proceeding. However, since any criminal prosecution on these charges is barred by the statute of limitations, the privilege against self-incrimination may not be successfully asserted to avoid responding to the discovery requests or otherwise in the proceedings before the Board of Dentistry.

**Conclusion**

An administrative agency has no authority to resolve facial challenges to the constitutionality of a statute. An agency may rule on the constitutionality of its own rules and procedures and the applicability of a statute to a particular case. The Chancery Court, on judicial review or in a declaratory judgment action, may consider constitutional issues arising as the result of a contested case proceeding even though the issues were not raised in the agency or, if raised, were not addressed.

Here, the Chancery Court did not err by addressing Richardson's constitutional challenges to the agency's authority in its

34

Memorandum and Order in the first chancery proceeding. Since Richardson failed to perfect an appeal of that decision to the Court of Appeals, the chancellor's rulings are final. Richardson is precluded by the doctrine of collateral estoppel from relitigating those issues. We, therefore, do not address the merits of the constitutional challenges. As to the only remaining issue, we hold that while the privilege against self-incrimination is viable in administrative proceedings, the circumstances of this case make it inapplicable and unavailable to Richardson on the present charges.

The judgment of the Court of Appeals is reversed. The case is remanded to the agency for further proceedings consistent with this opinion.

_____
Penny J. White, Justice

CONCUR:

Anderson, C.J.
Drowota, Reid, Birch, J.J.