IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 13, 2021

**STATE OF TENNESSEE v. JOSEPH GEVEDON**

**Appeal from the Circuit Court for Giles County**
**Nos. CR-14841, CR-14842        Stella L. Hargrove, Judge**

**No. M2020-00359-CCA-R3-CD**

The Defendant-Appellant, Joseph Gevedon, pleaded guilty to two counts of driving under the influence and to one count each of leaving the scene of an accident, violation of the financial responsibility law, and simple possession of marijuana. He agreed to serve an effective sentence of three consecutive terms of eleven months, twenty-nine days, with ninety-six hours in confinement and the remainder on probation. He also agreed to a special condition that a restitution hearing would be held at a later time. A violation of probation warrant was issued before the restitution hearing was held, and following a hearing, the trial court found that the Defendant violated the terms of his probation, revoked his probation, and ordered him to serve his sentence in confinement and to pay $30,490.76 as restitution. On appeal, the Defendant challenges the trial court's order requiring him to serve his sentence in confinement and its restitution order. After review, we conclude that we are without jurisdiction to consider the merits of this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., joined. JOHN EVERETT WILLIAMS, P.J., filed a dissenting opinion.

Brandon E. White (on appeal), Columbia, Tennessee; Claudia Jack, District Public Defender; and Hershell Koger (at hearing), Assistant District Public Defender, for the appellant, Joseph Gevedon.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Rebecca S. Parsons, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

This appeal originates from two cases in which the Defendant entered pleas of guilt on September 23, 2019. In case number CR-14841, the Defendant pleaded guilty to driving under the influence, leaving the scene of an accident, and violation of the financial responsibility law. Other charges were nolled pursuant to the plea agreement. He agreed to serve two concurrent eleven-month, twenty-nine-day sentences for the convictions for driving under the influence and leaving the scene of an accident, suspended to probation after service of forty-eight hours in confinement for the driving under the influence conviction. He also received a $10 fine for violation of the financial responsibility law. According to the revocation hearing transcript, case number CR-14841 arose out of an incident during which the Defendant crashed into a cemetery and damaged several grave monuments. A special condition that a restitution hearing would be held at a later time was placed on the judgment in count one, but the hearing was not held until the time of the probation revocation hearing.

In case number CR-14842, the Defendant pleaded guilty to driving under the influence and simple possession of marijuana, and he received two eleven-month, twenty-nine-day sentences, suspended to probation after service of 48 hours in confinement for the driving under the influence conviction. These convictions were ordered to be served consecutively to each other and to case number CR-14841.

On December 6, 2019, a violation of probation warrant was issued against the Defendant, alleging that he was arrested for driving on a revoked license on October 27, 2019. An amended violation of probation warrant was issued on January 10, 2020, alleging that the Defendant tested positive for Oxycodone during a drug screen conducted on December 11, 2019. The trial court conducted a joint hearing in which it adjudicated the violation of probation matter and the Defendant's pending restitution matter.

Markeyta Bledsoe, the Defendant's probation officer, testified that she discussed the rules of probation with the Defendant and that he signed an acknowledgement of the rules on September 23, 2019. She stated that she sought the first violation of probation warrant against the Defendant because he was arrested for driving on a revoked license on October 27, 2019, in violation of a condition requiring the Defendant not to violate any law. She sought an amended warrant when the Defendant tested positive for Oxycodone during a drug screen, in violation of a condition requiring him to not use illegal drugs. She

stated that the results were confirmed by a toxicology laboratory, and the toxicology report was entered as an exhibit. Bledsoe asked the Defendant if he was on medication, and he informed her that he was not. On cross-examination, she indicated that the Defendant did not explain how the drug was found in his system. She confirmed that the Defendant reported monthly as required until he was arrested for violating his probation.

The Defendant admitted to the grounds supporting the first violation of probation warrant, that he drove without a valid license in October of 2019. He explained that he had a restricted license at that point, that his mother obtained it for him, and that unbeknownst to him, his license expired two days prior to his being pulled over. He testified that he had the paperwork with him when he was pulled over. He stated that he had been employed full time cutting wood for about four months before the hearing, that he worked at least forty hours per week making $10.50 per hour and that he could work more than forty hours per week on occasion. He testified that his employer informed him that he could return to his employment once he was released from jail.

The Defendant testified that he lived in Giles County at his mother's house with his mother, brother, and girlfriend. He stated that he earned approximately $420 before taxes and $350 to $360 after taxes. His financial obligations included $100 per month for rent, $200 per month for car insurance, $100 per month for loan payments to satisfy a debt of approximately $500, $6 a week for life insurance, and a single payment of $131 for the remaining balance owed on his car. According to the Defendant, he was attacked in jail by another inmate after being arrested for violating his probation. He reported sustaining an injury to his eye and being separated from the aggressor.

On cross-examination, the Defendant testified that he did not use Oxycodone but that one of his coworkers gave him what the coworker held out to be Tylenol. After questioning by the trial court, he conceded that he stated that his girlfriend was his wife under oath and explained he did so because he intended to marry her when he was released from jail. He reported attending school through the eleventh grade, but he dropped out because he was fighting at school. He did not obtain a GED. The Defendant agreed that he was a victim in the present proceeding.

Two of the victims whose family members' grave monuments were damaged provided statements to the court. Rick Gaines stated that his parents' grave monuments were damaged by the Defendant and that he wanted the Defendant to pay restitution for all of the families affected by his conduct. Judith Eubank stated that the Defendant's vehicle destroyed her father's grave monument after jumping a concrete barrier, and she wanted

- 3 -

the Defendant to learn "a lesson for him to think before he acts." A stipulated computation of damages totaling $30,490.76 caused to the grave monuments was entered as an exhibit to the hearing.

The trial court found that the State carried its burden of proving the Defendant violated the conditions of his probation. The court found the Defendant's demeanor showed no remorse and that he did not realize the extent of damage he caused the victims. The court revoked the Defendant's probation in full and ordered him to serve his sentence in confinement. The court then stated, "That will not get restitution paid but . . . I am more interested in punishment." The court continued, "The restitution will be $30,490.76. That will become a civil judgment. . . . Most likely, and totally." The trial court entered a written probation revocation order on February 25, 2020. In the special conditions box of the revocation order, the trial wrote, "Following hearing on the merit, restitution shall be ordered in the amount of $30,490.76." A separate restitution order was never entered. This appeal followed.

## ANALYSIS

Before we consider the merits of the issues raised by the Defendant, we must first determine whether this court has jurisdiction over his challenges to the restitution imposed by the trial court. State v. Comer, 278 S.W.3d 758, 760 (Tenn. Crim. App. 2008). Tennessee Rule of Appellate Procedure 3(b) provides that a criminal defendant has "a right to appeal when the trial court has entered a final judgment of conviction." Id. at 760-61 (quotation omitted). However, "'Rule 3 appeals … may be taken only from *final* judgments.'" State v. William Chandler Daniels, No. E2009-02172-CCA-R3-CD, 2010 WL 5343776, at *1 (Tenn. Crim. App. Dec. 23, 2010) (quoting State v. Maddox, 603 S.W.2d 740, 741 (Tenn. Crim. App. 1980)). A judgment is considered final "'when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court.'" State v. David Allan Bohanon, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *3 (Tenn. Crim. App. Oct. 25, 2013) (quoting Richardson v. Tenn. Bd. of Dentistry, 913 S.W.2d 446, 460 (Tenn. 1995)).

Tennessee Code Annotated section 40-35-304(c) states that "[t]he court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments . . . ." Tenn. Code Ann. § 40-35-304(c). "In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the

- 4 -

defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d) (2019).[1]  In recent years, this court has issued varying opinions regarding whether it has jurisdiction to review cases where the judgment of conviction did not specify the amount of restitution owed or the payment schedule.  Compare Comer, 278 S.W.3d at 760 (dismissing the appeal for lack of jurisdiction where the restitution order stated "Payment Schedule shall be set by the Court upon completion of Appeal Process" and was therefore "functionally incomplete"), and State v. Rodney Northern, No. E2009 01969 CCA R3 CD, 2010 WL 2852288, at *2 (Tenn. Crim. App. July 21, 2010) (concluding that this court lacked jurisdiction where the judgment of conviction stated restitution was "TBD @ hearing," and the subsequent restitution order deferred establishing a payment schedule to the probation officer), with State v. Wendell Gary Gibson, No. M2001 01430 CCA R3-CD, 2002 WL 1358711 (Tenn. Crim. App. June 24, 2002), State v. Donna Harvey, No. E2009 01945 CCA-R3 CD, 2010 WL 4527013 (Tenn. Crim. App. Nov. 9, 2010), and State v. John Tyler Gilley, No. E2011 01627 CCA R3-CD, 2012 WL 4358731 (Tenn. Crim. App. Sept. 25, 2012) (all three cases exercising appellate jurisdiction without discussion where defendant pled guilty and amount of restitution owed and payment schedule were determined at a subsequent hearing).  This court has explained that because of the periodic nature of many defendants' income, "a defendant's ability to pay may be determined as much by the terms of payment as by the total amount of restitution," Comer, 278 S.W.3d at 762, thereby necessitating that the trial court set payment terms when setting the restitution amount.  Setting a restitution amount without also setting payment terms therefore renders a judgment "functionally incomplete" as it does not "decide[] and dispose[] of the whole merits of the case leaving nothing for the further judgment of the court."  David Allan Bohanon, 2013 WL 5777254, at *4 (citation omitted).

The facts in Comer and in Rodney Northern indicate that this court declined to extend jurisdiction to cases where the resulting restitution order expressly contemplated further action and was therefore functionally deficient.  In Comer, the restitution order anticipated that the trial court would set the payment schedule after the appeals process, thereby rendering the judgment incomplete.  278 S.W.3d at 760.  In Rodney Northern, the subsequent restitution order did not include payment terms as statutorily required and deferred establishing a payment schedule to the probation officer.  No. E2009-01969 CCA-R3-CD, 2010 WL 2852288, at *4; Tenn. Code Ann.§ 40-35-304(c).  Therefore, the

---

[1] The General Assembly recently amended section 40-35-304(d) to provide, "In determining the amount and method of payment or other restitution, the court *may* consider the financial resources and future ability of the defendant to pay or perform."  2021 Tennessee Laws Pub. Ch. 413 § 2 (eff. date Jan. 1, 2022) (emphasis added).  However, this amendment is not effective until January 1, 2022, and, therefore, it has no impact on the outcome of this appeal.

restitution orders in Comer and in Rodney Northern were procedurally flawed and lacking in finality.

Correspondingly, this court has concluded that it had jurisdiction to address the appeal where the judgment of conviction stated that restitution would be set at a later hearing and the subsequent restitution order set the restitution amount and payment schedule, and this court determined that the judgment of conviction and the subsequent restitution order, when taken together, constituted a "final judgment." David Allan Bohanon, 2013 WL 5777254, at *3-4; see also State v. Raymond Brandon Saffles, E2020-0116-CCA-R3-CD, 2021 WL 4075030, at *5 (Tenn. Crim. App. May 26, 2021) (concluding that this court had jurisdiction where repayment schedule was included in order of restitution); State v. Keisha M. Howard, No. E2011-00598-CCA-R3-CD, 2012 WL 3064653, at *10 (Tenn. Crim. App. July 30, 2012) (concluding that this court had jurisdiction where repayment schedule was included in order clarifying judgment).

In the present case, the judgment of conviction, entered on September 23, 2019, expressly stated, "Restitution hearing to be held." The judgment of conviction, however, did not constitute a final order because the judgment expressly stated that the trial court intended to resolve additional issues involving restitution. See Comer, 278 S.W.3d at 760. Following a hearing, the trial court entered an order on February 25, 2020, revoking the Defendant's probation and setting restitution in the "special conditions" section of the probation revocation order. No payment terms or schedule were included in the special conditions box, and the record does not contain any other orders or amended judgments regarding restitution. As previously noted, this court has declined to exercise jurisdiction where the repayment schedule was not included in the subsequent restitution order or amended judgments, thereby signaling a lack of finality in the judgments. See, e.g., David Allan Bohanon, 2013 WL 5777254, at *3-4. Consequently, in the instant case, we are unable to conclude that the "special conditions" box of the probation revocation order and the judgments together constituted a final judgment from which the Defendant could appeal. We are therefore without jurisdiction to address the merits of this appeal, and the appeal is accordingly dismissed. As a result, the case is still pending in the trial court. We note that should the defects in the instant case resulting in the lack of a final judgment be cured at the trial court level, this court would then have the ability to address the trial court's revocation of the Defendant's probation and its failure to address his financial resources and future ability to pay restitution.

## CONCLUSION

Because the record contains no final judgment from which the Defendant can appeal, we are without jurisdiction to address the instant appeal, and the appeal is dismissed.

_____
CAMILLE R. MCMULLEN, JUDGE