# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**April 29, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

RICHARD L. NORTHCOTT,    )
    )
    Petitioner/Appellant,    )
    )    Appeal No.
    )    01-A-01-9707-CH-00355
VS.    )
    )    Davidson Chancery
    )    No. 96-3021-III
TENNESSEE DEPARTMENT OF    )
CORRECTION, ET AL.,    )
    )
    Respondent/Appellee.    )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

RICHARD L. NORTHCOTT, #93811
Turney Center
Route One
Only, Tennessee 37140-9709
    Pro Se/Petitioner/Appellant

JOHN KNOX WALKUP
Attorney General and Reporter

JOHN R. MILES
Assistant Attorney General
425 5th Avenue North
Nashville, Tennessee 37243-0488
    Attorney for Respondent/Appellee

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

## O P I N I O N

An inmate in the custody of the Department of Correction filed a declaratory judgment action which alleged that the Department had failed to award him sentence reduction credits to which he was entitled. The Department did not respond in the allotted time, and the trial court granted the inmate a default judgment. The Department subsequently filed a motion to set aside the default, coupled with a motion for a summary judgment against the inmate. The trial court granted both motions. We affirm the trial court's action in setting aside the default, but we reverse the summary judgment.

## I. The Facts

On July 16, 1981, Richard L. Northcott was convicted of criminal sexual conduct in the first degree, and was given a determinate life sentence. The act for which he was convicted occurred in the summer of 1978. He claims that after he began his sentence, he was informed that he was not entitled to any sentence reduction credits.

In 1985, the Legislature changed the law pertaining to sentence reduction credits. Inmates sentenced under the old law, including the petitioner, were told that they could begin to earn sentence credits under the new provisions if they signed a waiver of their right to serve their sentences under the law in effect at the time they were sentenced. Mr. Northcott, who felt he had nothing to lose, signed the waiver on March 1, 1986, and began receiving sentence reduction credits at the rate prescribed by law.

Mr. Northcott subsequently came to believe that he had been misinformed as to his right to accumulate sentence credits before he signed the waiver, and that he was therefore entitled to have his sentence reduced by a greater number of days than the Department was willing to grant. He attempted to correct the

purported error through a long course of administrative appeals, which concluded on July 31, 1996 with a final denial of his contentions by the legal assistant for the Department of Correction. Having thus exhausted his administrative remedies, Mr. Northcott filed a Petition for Declaratory Judgment under the Uniform Administrative Procedures Act (UAPA) in the Chancery Court of Davidson County on September 27, 1996.

The petitioner noted that the law in effect when he committed his offense permitted prisoners to earn Good Time, Honor Time and Incentive Time Credits to reduce their sentences. Prior to Mr. Northcott's conviction, these forms of sentence reduction credits were replaced by Good Conduct Credits and Prisoner Performance Sentence Credits. Mr. Northcott asserted that under former Tenn. Code Ann. § 39-1-105 (repealed 1989), and under the principles enunciated in *Weaver v. Graham*, 450 U.S. 24 (1981), an offender is entitled to serve his sentence according to the law in effect at the time of his offense, or at the time of sentencing, whichever is more lenient.

After the petition was filed, there followed a long period, discussed in the next section of this opinion, during which the petitioner filed appropriate motions and the State failed to respond. The case finally came for hearing before the trial court, which on July 8, 1997 dismissed Mr. Northcott's petition and granted summary judgment to the State. In its summary judgment order, the court cited the grounds of lack of jurisdiction and res judicata. This appeal followed.

## II. The Default

As we stated above, Mr. Northcott filed his Petition for Declaratory Judgment on September 27, 1996. On November 14 counsel for the State filed a motion for a thirty-day extension of time in which to file a response to Mr. Northcott's

petition. On December 6 the trial court granted the motion, and ordered the respondent to file a response to the petition on or before Monday, January 6, 1997. No response having been received by that date, the petitioner filed a Motion for Default Judgment on January 24, 1997. The State failed to respond to the motion, and the court accordingly filed an order on March 14, 1997 granting the petitioner a default judgment, and ordering him to submit a final order stating the relief to which he was entitled.

Shortly thereafter the respondent finally swung into action, filing a motion on March 20, 1997 to set aside the default. Attached to the motion was an Affidavit of Counsel, in which the affiant, a private attorney who had previously been employed as an Assistant Attorney General, stated that he had entered into a contract with the State of Tennessee to handle a number of cases in various stages of litigation, and that he became responsible for the present case as well as a large number of other cases on February 12, 1997. Nothing in the affidavit or elsewhere in the record addresses the conduct of prior counsel, or the reasons for the State's failure to respond appropriately to the petitioner's motions or the orders of the court prior to February 12.

The affiant stated that he received about one hundred case files under the contract on February 27, and that attached to each file was a transfer memorandum. On the basis of the memorandum attached to this case, he claimed that he was led to believe that prior counsel had made some sort of substantive defense in the matter. An unauthenticated copy of this terse and rather unrevealing memorandum was attached as an exhibit to the petitioner's brief on appeal.

When he opened the file at a later time, the affiant could not find the responsive pleading that should have been filed by January 6. A phone call to the Clerk and Master's office revealed that a Motion for Default Judgment had been made

and granted in this case, and shortly thereafter counsel filed his motion to set aside the default.

On May 14, 1997, the trial court granted the State's motion to set aside the default judgment, holding that it had been improper to grant the default in the first instance. The court referenced Rule 55.04 of the Tennessee Rules of Civil Procedure, which states that "[n]o judgment by default shall be entered against the State of Tennessee or any officer of or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."

Since the default judgment was apparently based solely on the respondent's failure to defend, and contained no findings on the merits pursuant to Rule 55.04, we believe the court ruled correctly in setting the judgment aside.

### III. The Trial Court's Jurisdiction

Having prevailed on its argument that it was entitled to be heard, despite its delay in responding to the petitioner's contentions, the respondent argued both at trial and on appeal that the chancery court had no jurisdiction over the case, because the petition had not been filed in a timely way.

The State relied upon those provisions of the Uniform Administrative Procedures Act which set forth the time frame within which a petition for declaratory judgment must be filed. Tenn. Code Ann. § 4-5-322(b)(1) reads in pertinent part:

> Proceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute. Such petition shall be filed within sixty (60) days after the entry of the agency's final decision thereon. . . . Copies of the petition shall be served upon the agency and all parties of record, including the attorney general and reporter, in accordance with the provisions of the Tennessee Rules of Civil Procedure pertaining to service of process.

Our courts have found that the sixty-day time limit may not be extended, and that it is both mandatory and jurisdictional. *Bishop v. Department of Correction*, 896 S.W.2d 557 (Tenn. App. 1994). *Wheeler v. City of Memphis*, 685 S.W.2d 4 (Tenn. App. 1984).

The State acknowledges that the petition was filed less than sixty days after the letter of July 31, 1996 denying Mr. Northcott's request for a declaratory order, but it claims that he did not meet the jurisdictional requirements of Tenn. Code Ann. § 4-5-322(b) because he did not file a summons with his petition. The record shows that when notified of the deficiency by the Clerk and Master, the petitioner promptly sent a summons for service on the State's representatives.

The State relies upon the fact that at the time the petition was filed, Rule 3 of the Tennessee Rules of Civil Procedure stated that "[a]ll civil actions are commenced by filing a complaint and summons with the clerk of the court." The rule has since been amended to require only the filing of a complaint in order to commence an action. As the State pointed out, this court recently upheld a trial court's dismissal of a Petition for Declaratory Judgment in another case involving the provisions of Tenn. Code Ann. § 4-5-322(b), because the petitioner failed to file a summons within the allotted time. *HRA Inc. v. Tennessee Dept. of Commerce*, 914 S.W.2d 512 (1995).

However in the case of *Jaco v. Department of Health*, 950 S.W.2d 350 (Tenn. 1997), our Supreme Court has explicitly reversed our holding in the *HRA* case. The Court noted that the plain terms of the statute do not require that a summons be filed in order to obtain judicial review, but only that copies of the petition be served. The Court held that a petition for judicial review under the UAPA stands on a different footing than an original complaint against the State, because it is a continuing proceeding, in which the parties have been determined and are already of record.

Therefore, the service of a summons would serve no useful purpose that could not be accomplished by the statutorily required service of the petition, and it is not required in order to commence the judicial proceeding.

In a footnote, the court observed that this rationale would not apply if a party or agency that was not a party to the administrative proceedings were made a party to the proceedings for judicial review. But of course that is not the case before us.

The Supreme Court issued its opinion in the *Jaco* case on August 25, 1997, subsequent to the Chancery Court's order in the present case. The question of whether changes in decisional law are to be applied prospectively only, or retroactively as well, has been considered many times by our courts. While the results have varied, the principles have remained consistent.

The question received a thorough discussion in *Cumberland Capital Corp. v. Patty*, 556 S.W.2d 516, 538 (Opinion on Petition to Rehear) (Tenn. 1977). The Court found it undoubtedly had the power to apply its decisions retrospectively to cases still before the courts, where such an application would serve the interests of justice. The overriding consideration in such a situation is fundamental fairness. See also *Marshall v. Marshall*, 670 S.W.2d 213 (Tenn. 1984); *Kee v. Shelter Insurance*, 852 S.W.2d 226 (Tenn. 1993). Another important consideration is whether retroactive application of a new procedural rule will enhance the integrity and reliability of the fact-finding process at trial. *Tennessee v. Robbins*, 519 S.W.2d 799 (Tenn. 1975).

In light of the procedural history of this case, we believe that fundamental fairness requires that Mr. Northcott be heard, and that his petition be considered timely in accordance with the Supreme Court's holding in *Jaco*.

## IV. Res Judicata

The trial court stated that it found additional grounds for dismissal in the doctrine of res judicata. A simple definition of this term is that it is a "[r]ule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Black's Law Dictionary* 1172 (5th ed. 1979), as quoted in *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446 (Tenn. 1995).

The record reveals that on August 2, 1995, the petitioner filed a complaint captioned *Northcott v. Sundquist*, USDC No. 95-CV-746, in the United States District Court for the Middle District of Tennessee. The complaint included the same claims relating to sentence reduction credits that are found in the petition before us. On January 29, 1996, Judge Nixon dismissed the complaint for failure to state a claim upon which relief could be granted.

The record in this case includes the petitioner's complaint in federal court, and the Memorandum and Order dismissing the complaint. A careful reading of these documents reveals that the complaint asserts federal constitutional and statutory grounds for relief as well as state statutory grounds. The trial judge rejected the due process, ex post facto and equal protection arguments, and dismissed the petitioner's claim under 42 U.S.C. § 1983 for monetary damages and a jury trial.

Though he discussed the State's claims, and rejected the contention that all inmates whose crimes were committed prior to November 1, 1989 were entitled to have their sentence credits recalculated, the judge also wrote, "[i]n the current action Petitioner has not demonstrated that he has exhausted his state court

- 8 -

remedies. Because there has been no showing of exhaustion of state remedies, to the extent that this matter is a habeas corpus action, the Court dismisses it."

We believe that on the basis of the above-quoted language, we can fairly conclude that the federal court did not render a decision on the merits as to whether Mr. Northcott is entitled by state law to have his own sentence credits recalculated in accordance with the plea in his petition. We therefore find the theory of res judicata inapplicable.

## V.  The Petitioner's Contentions

We do not express an opinion as to whether Mr. Northcott is entitled to prevail on his arguments, or on the magnitude of the effect that a favorable decision would have on his sentence. We only believe that he has demonstrated that he is entitled to his day in court, and that the chancery court is obligated to examine his claim on the merits.

There is a question of law as to whether Mr. Northcott was entitled to any form of sentence reduction credits under any of the statutes in effect prior to the signing of the waiver on March 1, 1986. If that question is decided in his favor, the court must determine how much of a sentence reduction the applicable statutes should have provided for him prior to March 1, 1986. The court may also have to consider the petitioner's argument that the waiver he signed was invalid and should be set aside.

We note that if it becomes necessary to decide how many additional sentence reduction credits Mr. Northcott is entitled to, the court will have to make use of the expertise in sentence calculation possessed by the Department of Correction. But it will not be sufficient for the Department to file affidavits containing the results

of its calculations without providing the calculations themselves. The case of *Jones v. Reynolds*, App. No. 01A01-9510-CH-00484 (filed Nashville, July 2, 1997) indicates the kind of information the Department must provide in order for the petitioner to receive a meaningful review.

## VI.

The trial court's action in setting aside its default judgment is affirmed. In all other respects, the trial court is reversed. This cause is remanded to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE