# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 22, 2013 Session


# THE CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY D/B/A ERLANGER HEALTH SYSTEM V. UNITED HEALTHCARE PLAN OF THE RIVER VALLEY, INC. D/B/A AMERICHOICE AND TENNESSEE ATTORNEY GENERAL

### Appeal from the Chancery Court for Davidson County
### No. 091253II     Carol L. McCoy, Chancellor

_____

### No. M2013-00942-COA-R9-CV-Filed June 6, 2014

_____

Hospital filed an action against TennCare managed care organization ("MCO") for breach of contract and unjust enrichment when MCO refused to pay Hospital's standard charges for emergency services and follow-up care. Hospital was not part of MCO's "provider network" under the TennCare regulations and therefore was "non-contract" provider. MCO alleged Hospital was required to accept as payment the rate TennCare specified in its regulations. MCO filed motion for summary judgment, and the trial court dismissed the portion of the complaint to which the TennCare regulations may apply due to lack of subject matter jurisdiction. The trial court determined the Uniform Administrative Procedures Act ("UAPA") divested it of jurisdiction because Hospital did not first seek a declaratory order from the Bureau of TennCare regarding the applicability of its regulations to Hospital's dispute with MCO. Hospital appealed the dismissal of its claims, and we reverse. Because Hospital is not challenging applicability or validity of TennCare regulations, UAPA does not divest trial court of jurisdiction.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Reversed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

James Nathaniel Bowen, II, Steven Allen Riley, Nashville, Tennessee, for the appellant, The Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System.

Erin Palmer Polly, J. Mark Tipps, John C. Hayworth, Nashville, Tennessee, for the appellee, UnitedHealthcare Plan of the River Valley, Inc. d/b/a AmeriChoice.

Robert E. Cooper, Linda A. Ross, Sue Ann Sheldon, Nashville, Tennessee, for the appellee/intervenor, Tennessee Attorney General.

**OPINION**

## I. BACKGROUND

The Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System ("Erlanger") is a not-for-profit tertiary care medical center based in Chattanooga, Tennessee. UnitedHealthcare Plan of the River Valley, Inc. d/b/a AmeriChoice ("AmeriChoice") is a for-profit managed care organization ("MCO") based in Illinois that has contracted with the State of Tennessee to participate in the TennCare program. TennCare is Tennessee's managed care system for Medicaid-eligible individuals residing in Tennessee.

To provide healthcare services to the individuals enrolled in TennCare, MCOs enter into private contracts with healthcare providers and reimburse the providers at mutually agreed upon rates for the medical services they provide. The providers that enter into these contracts with MCOs are referred to as "participating" providers, and this group of providers constitutes an MCO's "provider network." Providers of medical services that do not have a contract with an MCO, but that provide services to an MCO's enrollees nonetheless, are referred to as "non-participating" or "non-contract" providers.

Pursuant to the Emergency Medical Treatment and Active Labor Act[1] ("EMTALA"), all providers of medical services are required to administer emergency services to anyone who presents himself or herself to the provider, regardless of whether the patient can pay for the services, is insured, or is insured by an MCO that has contracted with the provider for the provision of these services. Erlanger and AmeriChoice have a limited service contract with respect to certain obstetric and pediatric services. However, they do not have a full-service contract that covers other types of healthcare services that Erlanger may provide to AmeriChoice's enrollees. Thus, if an individual covered by TennCare and enrolled with AmeriChoice as his or her MCO presents himself or herself at Erlanger's emergency room, Erlanger is required by federal law to treat that individual and continue to provide necessary services until the individual is transferred to another provider or is released.

---

[1]42 U.S.C. § 1395d, *et seq.*

2

This case involves the rate at which AmeriChoice is required to reimburse Erlanger for two categories of medical care Erlanger has provided to AmeriChoice's TennCare enrollees since January 1, 2009, which is when the contract between Erlanger and AmeriChoice for these services expired. The two categories include services Erlanger was required to render under EMTALA: (1) outpatient emergency services and (2) medically necessary inpatient services required as a result of the outpatient emergency services.

Once the contract between Erlanger and AmeriChoice lapsed for these EMTALA services on January 1, 2009, Erlanger became a "non-participating" or "non-contract" provider with regard to its provision of these services. As part of the Deficit Reduction Act of 2005 ("DRA"), the federal government addressed the rate at which these non-contract providers of emergency services are to be compensated:

> Any provider of emergency services that does not have in effect a contract with a Medicaid managed care entity that establishes payment amounts for services furnished to a beneficiary enrolled in the entity's Medicaid managed care plan must accept as payment in full no more than the amounts (less any payments for indirect costs of medical education and direct costs of graduate medical education) that it could collect if the beneficiary received medical assistance under this subchapter other than through enrollment in such an entity. In a State where rates paid to hospitals under the State plan are negotiated by contract and not publicly released, the payment amount applicable under this subparagraph shall be the **average contract rate** that would apply under the State plan for general acute care hospitals or the average contract rate that would apply under such plan for tertiary hospitals.

42 U.S.C. § 1396u-2(b)(2)(D) (emphasis added).

In response to this legislation, the Tennessee General Assembly passed Tennessee Code Annotated § 71-5-108. This statute directed TennCare to set out a payment methodology consistent with the DRA regarding emergency services furnished by non-contract providers to individuals covered by TennCare:

> The TennCare bureau is directed to submit a state plan amendment to the centers for medicare and medicaid services that sets out a payment methodology for medicaid enrollees who are not also enrolled in medicare, consistent with provisions in § 6085 of the federal Deficit Reduction Act of 2005, regarding emergency services furnished by non-contract providers for managed care enrollees. The payment amount shall be the **average contract rate** that would apply under the state plan for general acute care hospitals. A

3

tiered grouping of hospitals by size or services may be utilized to administer these payments. The payment methodology developed pursuant to this section shall be budget neutral for the state fiscal year 2007-2008 when compared to the actual experience for emergency services furnished by non-contract providers for medicaid managed care enrollees prior to January 1, 2007. It is the intent that this section only applies to the emergency services furnished by non-contract providers for medicaid managed care enrollees.

Tenn. Code Ann. § 71-5-108 (emphasis added).

As a result of this statute, the TennCare Bureau promulgated the following regulation to address the compensation to be paid to non-participating providers for outpatient emergency services:

1200-13-13-.08 PROVIDERS

(2) Non-Participating Providers.

. . .

    (b)    Covered medically necessary outpatient emergency services, when provided to Medicaid managed care enrollees by non-contract hospitals in accordance with Section 1932(b)(2)(D) of the Social Security Act (42 U.S.C.A. § 1396u-2(b)(2)(D)), **shall be reimbursed at seventy-four percent (74%)** of the 2006 Medicare rates for these services. Emergency care to enrollees shall not require preauthorization.

TENN. COMP. R. & REGS. 1200-13-13-.08(2)(b) (emphasis added) (the "74% Rule").

TennCare also promulgated a regulation addressing the compensation to be paid to non-participating providers for inpatient services provided to TennCare enrollees admitted to the facility as a result of the requisite emergency outpatient care:

(c)    Covered medically necessary inpatient hospital admissions required as the result of emergency outpatient services, when provided to Medicaid managed care enrollees by non-contract hospitals in accordance with Section 1932(b)(2)(B) of the Social Security Act (42 U.S.C.A. § 1396u-2(b)(2)(B)), **shall be reimbursed at 57 percent** of the 2008 Medicare Diagnostic Related Groups (DRG) rates (excluding Medical

4

Education and Disproportionate Share components) determined in accordance with 42 CFR § 412 for those services. For DRG codes that are adopted after 2008, 57 percent of the rate from the year of adoption will apply. Such an inpatient stay will continue until no longer medically necessary or until the patient can be safely transported to a contract hospital or to another contract service, whichever comes first.

TENN. COMP. R. & REGS. 1200-13-13-.08(2)(c) (emphasis added) (the "57% Rule").

When Erlanger's contract with AmeriChoice expired at the end of 2008, Erlanger began billing AmeriChoice its standard rates for providing AmeriChoice's enrollees the inpatient and outpatient services it was required to provide pursuant to EMTALA. AmeriChoice has refused to pay the rates Erlanger has charged on the basis that the regulations promulgated by TennCare (the 74% Rule and the 57% Rule) do not require it to pay Erlanger's standard rates. This lawsuit followed.

## II. TRIAL COURT PROCEEDINGS

Erlanger filed a complaint against AmeriChoice in June 2009 alleging breach of implied contract and unjust enrichment essentially stating that AmeriChoice had not paid Erlanger the amount it was due for emergency related services. Erlanger contended that AmeriChoice was required to pay Erlanger (1) at a rate equal to the prevailing average contract rate payable by TennCare MCOs to participating tertiary care providers for the emergency non-contract services Erlanger provides to AmeriChoice's enrollees as required under EMTALA; and (2) at a reasonable rate of reimbursement for the non-contract services Erlanger is required by EMTALA to provide AmeriChoice's enrollees after stabilization of the emergency medical condition(s). Erlanger sought declaratory relief and damages.

AmeriChoice filed an Answer and asserted that it has paid Erlanger all that the hospital was due under applicable law, specifically the 74% Rule and the 57% Rule. According to AmeriChoice, TennCare's regulations determine the rate it was required to reimburse Erlanger for the EMTALA services Erlanger provided AmeriChoice's enrollees. AmeriChoice asserted a counterclaim seeking to recoup any amounts it overpaid Erlanger for its EMTALA services.

AmeriChoice also asserted that, because it was reimbursing Erlanger at the rate provided in TennCare's rules, Erlanger was, in essence, questioning the applicability of the regulations to it as a non-contract provider of services to AmeriChoice's enrollees and/or the validity of those rules if they were applied to Erlanger. Therefore, Erlanger was required to seek a declaratory order from TennCare regarding the interpretation of its rules before seeking relief against AmeriChoice.

5

## A. Partial Summary Judgment Motion

AmeriChoice filed a motion for partial summary judgment in which it argued that Erlanger's claims should be dismissed because the TennCare regulations determine the rates at which it is required to reimburse Erlanger for the outpatient and inpatient emergency services Erlanger provides to AmeriChoice's enrollees pursuant to EMTALA. It also repeated its argument that Erlanger was required to seek delaratory relief from the TennCare Bureau before seeking relief in the courts, pursuant to Tenn. Code Ann. § 4-5-225(b).

Erlanger responded by challenging the applicability of the rules to the services it had provided. Erlanger also argued that if the rules are applied to establish the maximum payment Erlanger can receive for those services, then the rules "are in direct conflict with and preempted by the DRA, as well as in conflict with Tenn. Code Ann. § 71-5-108."

After unsuccessful attempts at mediation, the parties filed Joint Stipulations regarding AmeriChoice's motion for partial summary judgment. Among those stipulations was the following: ". . . AmeriChoice and Erlanger also agree that the Court can decide the narrow issue of what reimbursement rate(s) apply" without resolving the issue of whether AmeriChoice had in fact paid the amounts due under the regulations. (There was a dispute as to whether the payments actually complied with the calculation method AmeriChoice said it used, but that issue was not decided by the trial court and is not part of this appeal.)

The first motion for partial summary judgment was denied by the trial court because of an issue concerning the scope of the motion. AmeriChoice filed a new motion and specifically asked the court to decide that the 74% Rule and the 57% Rule established the rates for reimbursement of outpatient and inpatient emergency services, respectively, that AmeriChoice must pay to a provider with whom it does not have a contract.

The motion was heard in November 2012, and the trial court announced from the bench that it intended to rule in favor of AmeriChoice, because it believed the 74% Rule and the 57% Rule were enacted in response to the DRA and Tenn. Code Ann. § 71-5-108. Therefore, according to the trial court, the regulations governed and limited Erlanger's rights to obtain payment from AmeriChoice for the emergency medical services at issue.

No order reflecting the trial court's oral ruling was entered, apparently because of disagreement between the parties. Erlanger then filed a motion for additional argument in which it urged the trial court to reconsider its intention to rule in favor of AmeriChoice. Erlanger asserted, *inter alia*, that application of the Rules to Erlanger's claims was contrary to statute and was unconstitutional.

Erlanger also notified the Attorney General, pursuant to Rule 24.04 of the Tennessee Rules of Civil Procedure, that the constitutional validity of the 74% Rule and the 57% Rule had been "drawn into question before the Chancery Court." The notice included a copy of Erlanger's motion for additional argument. Rule 24.04 requires notice to the Attorney General when the validity of a statute or administrative rule or regulation of the state "is drawn into question" in an action in which the State or an officer or agency is not a party.

On the other hand, Tennessee Code Annotated § 29-14-107 requires notice to the Attorney General when a statute of statewide effect is "alleged to be unconstitutional." After such notice, the attorney general is "entitled to be heard."

The Attorney General gave notice of intervention for the purpose of addressing the challenges to the Rules. The Attorney General participated in the action pursuant to the above statute and rule. He did not intervene on behalf of a State entity or official, and no party has sought to bring a State agency into the litigation as a party. In other words, no state agency or official is a party to this litigation.

## B. Trial Court Ruling

The trial court held a hearing on Erlanger's motion for additional argument. The court heard argument from Erlanger, AmeriChoice, and the Attorney General. The trial court stated,

> On behalf of the State, the Attorney General has taken the position that the validity of TennCare rules and regulations referred to as 74 percent and 57 percent rules are being challenged, and that the requirements triggered the intervention of the State because the validity of an administrative rule has been drawn into question to which the State or State agency is not a party.

The court agreed with that position and explained it was without jurisdiction to decide the issues in the case, in part, because Erlanger was seeking declaratory relief regarding the applicability of statutes or TennCare's regulations, without first seeking a ruling from TennCare. The trial court explained:

> In looking at the Complaint that has been filed, Count I asks the Court, pursuant to Tennessee Code Annotated 29-14-101 *et seq*. and Rule 57 of the Tennessee Rules of Civil Procedure, to issue a declaratory judgment that it is entitled to be paid (1) at a rate equal to the prevailing average contract rate payable by TennCare MCOs to participating tertiary care providers for the emergency non-contract services Erlanger must provide to AmeriChoice's

enrollees in accordance with its obligations under EMTALA and a declaratory judgment, and (2) at a reasonable rate of reimbursement for the non-contract services Erlanger must provide to AmeriChoice's enrollees after stabilization of the emergency medical condition.

In January 2013 the trial court issued a written order stating:

[P]ursuant to Tenn. Code Ann. § 4-5-225(b), because Erlanger has not previously sought a declaratory order from the Bureau of TennCare regarding the applicability or validity of the Regulations at issue, the Court is without jurisdiction to adjudicate Erlanger's claims for payment from AmeriChoice for pre-stabilization outpatient and inpatient emergency medical services. Those claims are hereby dismissed without prejudice.[2]

Erlanger sought interlocutory review of the trial court's order ruling it lacked jurisdiction to resolve Erlanger's claims. Both the trial court and this Court granted the appeal.

### III. ISSUES AND STANDARD OF REVIEW

The only issue before us in this interlocutory appeal is whether the trial court had jurisdiction to resolve Erlanger's and AmeriChoice's payment dispute.[3] The trial court's decision and our resolution of this issue, therefore, turns on the meaning of Tenn. Code Ann. § 4-5-225, a provision of the Tennessee Uniform Administrative Procedures Act. No facts are in dispute that are material to resolution of this limited issue. Statutory construction is a question of law that is reviewed *de novo* without any presumption of correctness. *Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011); *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 506 (Tenn. 2004); *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn. 2000).

---

[2]The trial court also dismissed without prejudice, due to the court's lack of jurisdiction, AmeriChoice's counterclaim seeking to recoup any money it overpaid Erlanger because this claim was also based on the TennCare regulations at issue. The court held that it had jurisdiction over the parties' claims for payment relating to post-stabilization services that Erlanger provided to AmeriChoice's enrollees and that the parties were free to pursue those claims.

[3]Both AmeriChoice and the Tennessee Attorney General filed appellate briefs. The Attorney General takes the same position as AmeriChoice, so we do not address the Attorney General's arguments separately from those made by AmeriChoice.

The Tennessee Supreme Court has explained the principles for statutory interpretation:

> When dealing with statutory interpretation, well-defined precepts apply. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008). Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res.*, Inc., 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc*., 202 S.W.3d 99, 102 (Tenn. 2006). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline*, 263 S.W.3d at 836. Courts must presume that a legislative body was aware of its prior enactments and knew the state of the law at the time it passed the legislation. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*Estate of French v. Stratford House*, 333 S.W.3d at 554.

The trial court's ruling is based upon Tennessee Code Annotated § 4-5-225(b). The full statute provides:

(a) The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant. The agency shall be made a party to the suit.

(b) A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order.

(c) In passing on the legal validity of a rule or order, the court shall declare the rule or order invalid only if it finds that it violates constitutional provisions,

9

exceeds the statutory authority of the agency, was adopted without compliance with the rulemaking procedures provided for in this chapter or otherwise violates state or federal law.

In determining whether this statute requires dismissal of a particular action, the determinative factor is, of course, the nature of the dispute and the specific claims and relief involved. The case before us is a dispute over money between private parties. The parties disagree over the amount of payment due for the provision of specific services. Because the parties do not have a contract with each other, they have no agreement on the amount of payment due. Consequently, they have each relied upon statutory and regulatory provisions as the method for calculating the amount due.

The hospital is required by law to provide emergency services, including services to individuals without any health insurance and those who are enrolled in TennCare through different MCOs. The hospital participates in TennCare, but does not have a contract with AmeriChoice, the MCO involved in this lawsuit.

AmeriChoice has contracted with the TennCare Bureau to provide health care to those who have chosen AmeriChoice as its TennCare insurance provider. AmeriChoice is paid by TennCare a specific amount for each of its enrollees. It then contracts with medical service providers to pay a specific fee for each service it may provide to AmeriChoice enrollees.

On appeal, the parties have somewhat refined their positions on the merits of their financial dispute. AmeriChoice continues to assert that the regulations establishing the 74% Rule and the 57% Rule were adopted in response to legislative action and that those Rules establish the amount to be paid for the emergency services at issue. It is perhaps more accurate to say that the rules establish the method for calculating an exact amount. AmeriChoice takes the position that the Rules establish a "ceiling" for the amount to be paid per service.

On the other hand, Erlanger asserts that the 74% Rule and the 57% Rule only establish a "floor" for the payment due. It asserts that it does not seek to invalidate the Rules and is not challenging their applicability. Erlanger's position is that the DRA and Tennessee Code Annotated § 71-5-108 establish the "average contract price" as the amount due. Accordingly, it argues, the Rules must be interpreted in a way that allows for larger amounts if the average contract price is actually established to be more.

Although Erlanger and AmeriChoice argue their positions on the merits of the payment dispute, that is not before us on this appeal. Additionally, the trial court has not ruled on the correct standard to use in calculating the payment. While the court stated its intention from

10

the bench, no written order was entered finalizing that decision. The court determined it had no jurisdiction to decide the issues. Thus, there is no trial court ruling on the issues raised in the summary judgment motion on the merits.

## IV. ANALYSIS

The requirement of Tennessee Code Annotated § 4-5-225(b) for an administrative declaratory order prior to court action applies to a request for declaratory judgment "concerning the validity or applicability of a statute, rule or order."

The Tennessee Supreme Court has addressed the constitutionality of Tennessee Code Annotated § 4-5-225(b) and has found that it cannot be applied to certain issues or situations. *Colonial Pipeline Company v. Morgan*, 263 S.W.3d 827 (Tenn. 2008). Because the Tennessee Constitution prohibits one branch of the government from encroaching on the powers or functions of the other two branches, a statute cannot give judicial functions to another branch of government. *Colonial Pipeline*, 263 S.W.3d at 843 (citing *Richardson v. Bd. of Dentistry*, 913 S.W.2d 446, 453 (Tenn. 1995). It is "the sole obligation of the judiciary to interpret the law and determine the constitutionality of actions taken by the other two branches of government." *Colonial Pipeline*, 263 S.W.3d at 843 (quoting *Richardson,* 913 S.W.2d at 453).

*Colonial Pipeline* involved a direct challenge to the validity of a tax statute, filed by a taxpayer, with a State defendant. The Supreme Court was called upon to determine whether the taxpayer was required, pursuant to Tenn. Code Ann. § 4-5-225, to seek declaratory relief from the Board of Equalization, a state agency, before seeking declaratory relief from the Chancery Court when challenging the constitutionality of specific portions of the state tax code. 263 S.W.3d at 832, 842-46.

Reaffirming earlier holdings and principles viewing earlier decisions, the Court recognized that a variety of constitutional issues may arise in the administrative context, and that administrative tribunals are authorized to resolve two types of complaints involving constitutional issues: (1) those challenging an agency's application of a statute or rule as unconstitutional and (2) those challenging the constitutionality of a procedure used by an agency. 263 S.W.3d at 843. However, the Court was unequivocal that administrative tribunals are not authorized to resolve a litigant's claim challenging the substantive constitutionality of a duly enacted law. *Id*. at 843-44.

In reviewing another related UAPA section, Tenn. Code Ann. § 4-5-223(a), the *Colonial Pipeline* Court held that this provision violates the separation of powers clause in

11

the Tennessee Constitution to the extent the statute allows an agency to determine the constitutional validity of a statute. The Court wrote:

> The provision in the UAPA that an agency may issue a declaratory order regarding the "*validity* or applicability of a statute" is, therefore, in partial conflict with our ruling in *Richardson*. Tenn. Code Ann. § 4–5–223(a) (emphasis added). While an agency ruling on the "applicability" is permissible, the separation of powers clause in our constitution trumps any provision in the UAPA permitting a determination as to the "validity" of a statute. *Richardson*, 913 S.W.2d at 455 ("To vest an agency with the authority to determine the constitutionality of the legislation empowering the agency to act would violate the doctrine of the separation of powers."). In consequence, any provision requiring administrative review prior to a direct challenge to the facial validity of a statute violates our state constitution.

*Colonial Pipeline*, 263 S.W.3d at 844.

Thus, even if Erlanger were seeking to challenge the constitutionality of the regulations on payment for emergency services, which Erlanger denies, that issue is not appropriate for decision by an administrative agency and must be decided by a court. Comparing this case to the *Colonial Pipeline* description of two situations where an agency may consider constitutional issues, it is clear that the case before us does not meet either situation. This case does not involve the TennCare Bureau's applying a statute or regulation to Erlanger; neither does it involve the use of any procedure by the Bureau. The agency has taken no action to enforce the regulations, to require Erlanger to accept any particular amount as payment, or to force or prevent AmeriChoice from paying any particular amount.

Consequently, Erlanger was not required to first seek a declaratory order on the constitutionality of the Rules, were it raising that challenge. However, Erlanger explains that it is not seeking to invalidate the 57% and 74% Rules. Moreover, Erlanger contends, it is not challenging the validity or applicability of the Rules. Indeed, Erlanger does not mention the Rules in its complaint and does not rely on them for the relief it seeks.

The 57% Rule and the 74% Rule have come into play *only* because AmeriChoice is relying on these Rules to defend Erlanger's breach of contract and unjust enrichment claims. AmeriChoice takes the position that it is not liable to Erlanger because it has paid Erlanger for its EMTALA services as the Bureau of TennCare has directed through its 57% Rule and 74% Rule.

12

Erlanger and AmeriChoice disagree about the interpretation of the 57% Rule and the 74% Rule. AmeriChoice contends that for outpatient emergency services, it is only required to pay Erlanger 74% of the 2006 Medicare rates for those services. For inpatient hospital admissions required as a result of emergency outpatient services, AmeriChoice contends it is only required to pay Erlanger 57% of the 2008 Medicare Diagnostic Related Groups rates.

Erlanger disagrees with AmeriChoice's interpretation and argues that the DRA and Tenn. Code Ann. § 71-5-108 require AmeriChoice to compensate Erlanger in an amount equal to the "average contract rate" that would apply under the state plan for general acute care hospitals. *See* 42 U.S.C.S. § 1396u-2(b)(2)(D); Tenn. Code Ann. § 71-5-108. The parties agree that the state statute was passed in response to the DRA, and that the 57% Rule and the 74% Rule were both enacted in response to the state statute. Both parties appear to agree that the Rules apply to the issue of correct payments.

Because the enabling legislation for the Rules specify that non-contract providers are supposed to be paid the "average contract rate," Erlanger argues that, unless the 57% Rule and the 74% Rule are equal to this rate, they must be interpreted to mean the minimum amount, or floor, that MCOs like AmeriChoice are required to pay non-contract providers like Erlanger for EMTALA services. AmeriChoice, in essence, interprets the regulations as establishing a ceiling.

It is apparent to us from a careful review of the appellate briefs of the parties that the dispute that is at the heart of this case is a difference over the interpretation of the relevant statutes and regulations. Interpretation of the law is, in the first instance, the province of the courts.

In fact, this court has considered and decided strikingly similar claims in another case involving a hospital's suing a TennCare MCO over the correct payment for emergency medical services provided to that MCO's enrollees when the hospital no longer was an in-network provider of the MCO. *River Park Hosp. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W.3d 43 (Tenn. Ct. App. 2002). In that case, the hospital billed the MCO at its standard rate and, when the MCO refused to pay that amount, sued claiming, *inter alia*, breach of implied contract and unjust enrichment. The MCO defended on the basis that its rates of reimbursement were governed by its risk agreement with the State and applicable TennCare regulations. 173 S.W.3d at 50.

The regulations at issue governed out-of-network payments and appeared to include the predecessor to the regulations at issue in this case. The parties in *River Park Hospital* took different positions on the interpretation of the statutes and regulations. While they agreed that the regulations established a "floor" for the payments, the MCO took the position

that the regulations also established a "ceiling," or, more precisely, set the amount that must be accepted by the provider. The hospital took the position that the regulations did not place an upper limit, or that they did not set the only payment measure. *River Park Hosp.,* 173 S.W.3d at 55.

This court decided the payment dispute between the hospital and the MCO by construing the relevant statutes and regulations. 173 S.W.3d at 55-56. We see no difference in the types of issues and analytical approach in *River Park Hospital* and the case before us. The UAPA provision requiring administrative action before access to the courts does not apply in this case to divest the Chancery Court of its jurisdiction over the parties' dispute.

AmeriChoice cites numerous cases to support its argument that the trial court was correct in ruling the UAPA divested it of jurisdiction. *See, e.g., Stewart v. Schofield*, 368 S.W.3d 457 (Tenn. 2012); *Baptist Hospital v. Tennessee Dep't of Health*, 982 S.W.2d 339 (Tenn. 1998); *Hall v. McLesky*, 83 S.W.3d 752 (Tenn. Ct. App. 2002); and *Watson v. Tenn. Dep't of Correction*, 970 S.W.2d 494 (Tenn. Ct. App. 1998). In each of those cases, however, a private party had a dispute with a state entity, and the issue in the case centered around the application of an agency regulation or adverse action by the state agency against the private party.[4]

Erlanger, in contrast, has no complaint with the Bureau of TennCare and is not in an adversarial position with respect to any action the Bureau has taken against it or any other entity. Erlanger's complaint is with AmeriChoice, a private entity. The fact that regulations enacted by the Bureau of TennCare may come into play to resolve the parties' dispute does not transform Erlanger's complaint into a dispute with the Bureau of TennCare. Unlike *Image Outdoor Advertising* and the other cases upon which AmeriChoice relies, Erlanger is not complaining about an action a state agency took that had an adverse effect on Erlanger. Trial courts are often called upon to interpret statutes and regulations to resolve private parties' disputes, and this case is no different. *See, e.g., Houghton v. Aramark Educ. Resources, Inc.*, 90 S.W.3d 676 (Tenn. 2002); *Barnett v. Barnett*, 27 S.W.3d 904 (Tenn. 2000); *Hughes v. Lumbermens Mut. Cas. Co., Inc.*, 2 S.W.3d 218 (Tenn. Ct. App. 1999).

---

[4]AmeriChoice also cites *Image Outdoor Advertising, Inc. v. CSX Transp., Inc.*, 2003 WL 21338700 (Tenn. Ct. App., June 10, 2003), to support its argument that the trial court is without jurisdiction. Although the plaintiff in *Image Outdoor Advertising* named only private parties as defendants, the plaintiff's complaint was really that Tennessee Department of Transportation had wrongfully issued billboard permits to the named defendants. *Id*. at *6.

The only issue before us is in this interlocutory appeal is the trial court's dismissal of Erlanger's claims and AmeriChoice's counterclaim due to lack of subject matter jurisdiction. We hold that Tennessee Code Annotated § 4-5-225(b) did not deprive the trial court of jurisdiction. Accordingly, we reverse the trial court's judgment and remand this case to the trial court for further proceedings.[5]

## V. CONCLUSION

The trial court's judgment that the UAPA divests it of subject matter jurisdiction to resolve the parties' dispute is reversed, and the case is remanded to the trial court for further proceedings. Costs shall be taxed to the appellees, UnitedHealthcare Plan of the River Valley, Inc. d/b/a AmeriChoice and the Tennessee Attorney General.

_____
PATRICIA J. COTTRELL, JUDGE

---

[5]Erlanger has requested that we remand the case to the trial court with directions about how to interpret the 74% Rule and the 57% Rule. We refrain from giving any instruction to the trial court because that issue is not before us in this interlocutory appeal.