IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2021

## STATE OF TENNESSEE v. JOHNNY SUMMERS CAVIN

**Appeal from the Criminal Court for Sullivan County**
**No. S72963   James F. Goodwin, Jr., Judge**
_____

**No. E2020-01333-CCA-R3-CD**
_____

The Defendant-Appellant, Johnny Summers Cavin, entered guilty pleas to burglary and theft of property valued more than $2,500 but less than $10,000. He also entered guilty pleas to unrelated charges from a separate case. Pursuant to a plea agreement, the Defendant received concurrent sentences of two years and six months each on supervised probation, to be served consecutively to the sentences he received in an unrelated probation violation case. In a subsequent restitution hearing, the trial court ordered him to pay a total of $5,500 in restitution. On appeal, the Defendant contends that the trial court did not have jurisdiction to impose restitution and that, alternatively, the trial court erred in setting the restitution amount at $5,500, asserting that the victim's pecuniary loss was not substantiated by evidence and that the amount is unreasonable based on the Defendant's income. Upon review, we conclude that we are without jurisdiction to address the merits of the instant case, and the appeal is dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court. JAMES CURWOOD WITT, JR., J., filed a concurring opinion. ROBERT L. HOLLOWAY, JR., J., filed a dissenting opinion.

Andrew J. Gibbons, District Public Defender, and Lesley A. Tiller, Assistant District Public Defender, for the Defendant-Appellant, Johnny Summers Cavin.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Barry Staubus, District Attorney General; and Teresa Nelson, Assistant District Attorney General, for the Appellee, State of Tennessee.

1

# OPINION

**Guilty Plea Hearing**.  On July 31, 2020, the Defendant entered guilty pleas to burglary and theft of property valued more than $2,500 but less than $10,000.  At the same plea hearing, he also entered guilty pleas to unrelated charges of driving on a revoked license and registration violation. Pursuant to a plea agreement, he was sentenced as a Range I, standard offender and received a total effective sentence of two years and six months on supervised probation, to be served consecutively to his sentence in an unrelated probation violation case.  The underlying facts for the theft and burglary were not specified at the plea hearing.  The amount of restitution owed was to be determined at a later hearing.

**Restitution Hearing**.  At the September 25, 2020 restitution hearing, Karen Jill Rich testified that she was the victim of the theft and burglary charges.  She explained that she owned a tobacco farm and that the farm had a metal barn located on the property that was "easily 40 by 100, 120 feet."  Rich stated that she had torn down a wooden barn on her property and stored the lumber in the metal barn.  Rich used some of the stored lumber "to build various things[,]" but the remainder of the lumber was stolen from the metal barn.  She described the lumber as including 13 types of wood, containing beams, planks, short pieces, and long pieces.  Rich estimated there to be "easily a thousand, 1500 pieces" of lumber in the metal barn worth "easily over $10,000."  Photographs of the metal barn and photographs of items that had been made from the stored lumber, including a rocking chair, bowls, a chest, bookcases, and a fireplace mount, were received as exhibits.  Rich identified a Facebook post made by the Defendant in which he advertised a single red oak beam for sale for $80.  A copy of the Facebook post was received as an exhibit.  She agreed that the value of the beams would be "at least" $80 and depend on the length of the beam.

On cross-examination, Rich testified that she tore the wooden barn down around 2005.  She stated that the metal barn was not located on the same property as her residence, but she visited the metal barn "at least every other day."  The metal barn was not visible from any road.  Rich agreed that she had "caught [the Defendant] with" a "small pickup truckload of reclaimed lumber[,]" which "could not fit a thousand or 1500 pieces" of wood.  A photograph of the small pickup truck filled with lumber, which was taken by Rich's neighbor, was received as an exhibit.  Rich reported the theft on February 20, 2020, and stated that she visited the metal barn "one or two days" before reporting the theft.  She conceded that she reported to police that the lumber theft was worth "a thousand dollars[.]"  Rich disagreed that the "gates [we]re wide open" on the farm property where the metal barn was located.

On redirect examination, Rich testified that "[a] lot of the wood" was in the metal barn when she visited the property on "February 18th or February 19th[.]"  She explained

that she noticed "some of" the lumber was missing prior to that visit, but she "couldn't figure out who" was stealing the lumber until she saw "those pictures of [the Defendant] leaving[.]" When she returned to the metal barn on February 20, there was "little to nothing" left in the metal barn. She reiterated that the value of the lumber "would be certainly $10,000 . . . somewhere in that vicinity[.]"

On re-cross examination, Rich conceded that she noticed "nine months to a year" before February 20 that "some wood was going missing[.]" She explained that she bought locks for the gate near the metal barn, but "[e]very one of them was cut."

On further redirect examination, Rich testified that on "February 18th or 19th" there were "easily" a thousand pieces of wood in the metal barn. However, when the State asked again the same question again, Rich responded, "Easily seven to 800." She reiterated that there was "[n]othing left" when she visited the metal barn on February 20.

The Defendant testified that he earned between $9.50 and $10.00 an hour "doing basic construction work." He typically worked "30 to 40 [hours a week], depending on the weather" and was paid as an independent contractor. He agreed that he earned no more than "$400 a week" before taxes. The Defendant testified that his monthly expenses consisted of "rent, power, water, three kids." He elaborated that he paid $450 a month for rent, between $120 and $130 a month for power, and between $35 and $40 a month for water. The Defendant stated that he had not yet been ordered to pay child support for his three children but that they lived with him when he was not in jail. He could not estimate how much money he spent on his three children because "it varie[d], just depending on their needs are."

The Defendant explained that the red oak beam that he advertised for sale on Facebook came from a wooden barn that he tore down "between September and October 2019" at the request of its owners. He affirmed that the owners had allowed him to keep the wood from the barn. He did not sell the red oak beam where he usually sold his reclaimed lumber because they "ha[d] no use for that type of wood." A "tally of the lumber" that the Defendant sold to Atlantic Reclaimed Lumber on February 20, 2020, to whom he previously sold reclaimed lumber, was received as an exhibit. He explained that the majority of the reclaimed lumber he sold was "four quarter," or one inch thick, and "four or five" pieces of the lumber were "eight quarter," or two inches thick. He acknowledged that he was the person driving the pickup truck full of lumber in the previously-received photograph and that he "did steal some lumber" from Rich's barn. He testified that the only lumber he stole from Rich's barn was the lumber depicted in the photograph of the pickup truck, which made up the totality of the reclaimed lumber he sold to Atlantic Reclaimed Lumber. The Defendant agreed that he received $230 from Atlantic Reclaimed Lumber for the wood he sold them but that the resale value of the lumber was

3

probably "between eight and $900[.]" He testified that the bed of his pickup truck was approximately "three-and-a-half foot wide on the inside by ten-and-a-half foot tall by six foot long."

On cross-examination, the Defendant affirmed he received $80 for the red oak beam he advertised for sale on Facebook. He agreed that he had previously been convicted of grand larceny and criminal trespass for "[p]icking up recycled metal off [the] side of the road[,]" that those charges were still pending, and that he had previously been convicted of stealing wood. He testified that he had previously sold stolen wood to Vintage Timber. The Defendant stated that he was no longer on probation for his previous charge of stealing wood.

At the conclusion of the hearing, the trial court asked both parties whether they would prefer for the case to be transferred to another trial court because of the current trial court's "particularized knowledge from [its] personal life" that could inform its ruling on "what the value of th[e] wood would be." The Defendant ultimately decided to proceed with the current trial court and "waive the potential conflict."

The trial court noted the disparity between Rich's direct testimony that there were "between a thousand and 1500 pieces of wood in her tobacco barn" and her testimony on cross-examination that there were only "between seven and 800 pieces because she thought people had been taking wood from her for over a year." The trial court also noted that Rich testified that there were a thousand beams in her barn after the Facebook post showing a beam for sale for $80 dollars was received as an exhibit. The trial court explained that based on the size of Rich's barn, there was "no way there's a thousand beams in that barn." The trial court also stated that Rich's testifying that she was at her property two days before the theft "would lead the [c]ourt to believe that she went into the barn and took an inventory of the wood that was in there . . . . And [the trial court] do[es]n't think that's true." However, based on the photograph of the Defendant's pickup truck filled with wood, the trial court also found that "there's more in the back of that pickup truck than" what was sold to Atlantic Reclaimed Lumber. Based on the photographs of Rich's barn, the trial court explained that there were pieces of wood in the photograph that were meant to "hold the tobacco barn up" and would "not be part of the lumber that [Rich]'s claiming that is missing." The trial court finally noted that Rich testified that the stolen wood was worth $10,000, while the Defendant testified that the stolen wood was only worth $900.

In determining the restitution amount, the trial court explained that it had "to consider [the Defendant's] ability to pay" and was therefore going to "set the restitution based on a combination of his ability to pay and [] Rich's estimation of what the wood was, taking into account that she did tell us that . . . wood had been [] taken away before that." The trial court also took into account the "13 different species of hard and softwood[,]"

4

"the size of the barn," and that Rich knew that wood was previously stolen and that she believed the Defendant had taken it. The trial court also noted that the Defendant testified that he was able to work when he was not in jail. The trial court set the restitution amount at $5,500 and stated that it would "be paid through the probation office."

The Defendant first filed a notice of appeal on September 30, 2020. On October 26, 2020, the Defendant filed a "Motion to Set Aside Amended Judgment and Order of Restitution," noting that the State had filed judgments on August 20, 2020, without mention of a restitution amount or that a restitution hearing was set for September 25, 2020. The motion also stated that the amended judgment, filed on October 1, 2020, was void because the original judgment became final 30 days after it was filed. The same day, the trial court entered a written order summarily denying the motion. In denying the motion, the trial court found that "the restitution was properly ordered pursuant to the plea agreement entered into by the parties, as stated in the Order of Restitution, that the Order of Restitution and Judgments entered on August 20, 2020[,] constitute a final judgment." The Defendant filed a supplemental notice of appeal on November 2, 2020, and the appeal is now properly before this court.

## ANALYSIS

The Defendant contends on appeal that the trial court did not have jurisdiction to impose restitution and that, alternatively, the trial court erred in setting the restitution amount at $5,500, asserting that the victim's pecuniary loss was not substantiated by evidence and that the amount is unreasonable based on the Defendant's income. The State responds that the trial court had jurisdiction to enter the restitution order, and the restitution amount set by the trial court was reasonable based upon the proof. We conclude that we are without jurisdiction to hear this appeal.

Initially, we must determine whether the trial court retained jurisdiction to enter a restitution order and amended judgments on October 1, 2020, and whether this court has jurisdiction to hear the instant appeal. Typically, a judgment in a criminal case becomes final thirty days after its entry unless a notice of appeal or a delineated post-trial tolling motion is filed. Tenn. R. App. P. 4(a), (c). After this thirty-day period, a trial court generally does not have the authority to amend its judgment. State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn.1996) (citing State v. Moore, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)). However, a trial court may amend or correct a judgment within thirty days of its entry and prior to the filing of a notice of appeal. Id. ("Once the trial court loses jurisdiction, it generally has no power to amend its judgment."). Where the restitution order is separate from and subsequent to the judgment of conviction, as in this case, we must first address whether jurisdiction is proper. See State v. Keisha M. Howard, No. E2011-00598-CCA-R3-CD, 2012 WL 3064653, at *8-9 (Tenn. Crim. App. July 30, 2012);

5

see also State v. William Chandler Daniels, No. E2009-02172-CCA-R3-CD, 2010 WL 5343776, at *1-2 (Tenn. Crim. App. Dec. 23, 2010).  Pursuant to Tennessee Rule of Appellate Procedure 3(b), a convicted criminal defendant "has a right to appeal when the trial court has entered a final judgment of conviction."  State v. Comer, 278 S.W.3d 758, 760-61 (Tenn. Crim. App. 2008) (internal quotation marks omitted).  In other words, "Rule 3 appeals . . . may be taken only from final judgments."  State v. Maddox, 603 S.W.2d 740, 741 (Tenn. Crim. App. 1980); see also Tenn. Code Ann. § 16-5-108(a)(1) ("The jurisdiction of the court of criminal appeals shall be appellate only, and shall extend to review of the final judgments of trial courts in . . . [c]riminal cases, both felony and misdemeanor.").  The Tennessee Supreme Court has held that "a judgment is final 'when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court.'"  Richardson v. Tenn. Bd. of Dentistry, 913 S.W.2d 446, 460 (Tenn. 1995) (quoting Saunders v. Metro. Gov't of Nashville & Davidson Cnty., 383 S.W.2d 28, 31 (Tenn. 1964)).

In recent years, this court has issued varying opinions regarding whether it has jurisdiction to review cases where the judgment of conviction did not specify the amount of restitution owed or the payment schedule.  Compare Comer, 278 S.W.3d at 760 (dismissing the appeal for lack of jurisdiction where the restitution order stated "Payment Schedule shall be set by the Court upon completion of Appeal Process" and was therefore "functionally incomplete"), and State v. Rodney Northern, No. E2009-01969-CCA-R3-CD, 2010 WL 2852288, at *2 (Tenn. Crim. App. July 21, 2010) (concluding that this court lacked jurisdiction where the judgment of conviction stated restitution was "TBD @ hearing," and the subsequent restitution order deferred establishing a payment schedule to the probation officer), with State v. Wendell Gary Gibson, No. M2001-01430-CCA-R3-CD, 2002 WL 1358711 (Tenn. Crim. App. June 24, 2002), State v. Donna Harvey, No. E2009-01945-CCA-R3-CD, 2010 WL 4527013 (Tenn. Crim. App. Nov. 9, 2010), and State v. John Tyler Gilley, No. E2011-01627-CCA-R3-CD, 2012 WL 4358731 (Tenn. Crim. App. Sept. 25, 2012) (all three cases exercising appellate jurisdiction without discussion where defendant pled guilty and amount of restitution owed and payment schedule were determined at a subsequent hearing).

The facts in Comer and in Rodney Northern indicate that this court declined to extend jurisdiction to cases where the resulting restitution order expressly contemplated further action and was therefore functionally deficient.  In Comer, the restitution order anticipated that the trial court would set the payment schedule after the appeals process, thereby rendering the judgment incomplete.  278 S.W.3d at 760.  In Rodney Northern, the subsequent restitution order did not include payment terms as statutorily required and deferred establishing a payment schedule to the probation officer.  No. E2009-01969-CCA-R3-CD, 2010 WL 2852288, at *4; Tenn. Code Ann.§ 40-35-304(c).

6

Therefore, the restitution orders in Comer and in Rodney Northern were procedurally flawed and lacking in finality.

In the instant case, the Defendant entered guilty pleas to burglary and theft more than $2,500 but less than $10,000 on July 31, 2020. At the plea hearing, the trial court informed the Defendant that there was "restitution to be determined[,] and it will be placed on the judgment forms." The plea agreement includes a notation that the Defendant had to pay restitution to Jill Rich, amount to be determined at a later hearing. The prosecutor filed judgments on the case on August 20, 2020, apparently without informing the trial court or the Defendant. The burglary conviction judgment has "Jill Rich" entered in the "Victim Name" section, and under "Special Conditions" includes a notation that "Payment of fines, restitution, and costs, as a condition of supervision by the Tennessee Department of Probation and Parole, based upon the [D]efendant's ability to pay." The theft conviction judgment form does not include the victim's name but has the same notation. The restitution hearing was held on September 25, 2020. At the very end of the hearing, the prosecutor informed the trial court and defense counsel that she had filed the judgment forms on August 20 and that they would have to be amended. Defense counsel asserted that she never received the filed judgments. On September 30, 2020, defense counsel filed a notice of appeal, forty-one days after the original judgments had been filed. On October 1, 2020, the trial court entered a restitution order and amended judgments. The restitution order stated "[a]fter consideration of the [D]efendant's ability to pay and the victim's pecuniary loss, the Court orders restitution in the amount of $5,500. This amount shall be paid through the Board of Probation and Parole during the [D]efendant's supervision." The trial court did not specify a payment schedule but did find that "the Order of Restitution and Judgments entered on August 20, 2020[,] shall constitute a final judgment pursuant to State v. [David Allan] Bohanon, [No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *1 (Tenn. Crim. App. Oct. 25, 2013),] and State v. [Jennifer Murray] Jewell, No. M2015-02141-CCA-R3-CD, 2017 WL 65242, at *1 (Tenn. Crim. App. Jan. 6, 2017)]. Amended judgments were entered the same day, stating, "Judgments are amended to reflect that the Court ordered the Defendant to pay restitution of $5,500.00 after a restitution hearing on 09/25/2020. See Order of Restitution." On October 26, the Defendant filed a "motion to set aside amended judgments and restitution order," which the trial court summarily denied. On November 2, 2020, defense counsel filed a second notice of appeal, seven days after the trial court's denial of the motion.

With respect to whether the trial court retained jurisdiction to enter the amended judgments and restitution order, we conclude that the judgments filed on August 20, 2020, did not constitute final judgments, and the Defendant was therefore unable to appeal from them, and the trial court retained jurisdiction to amend them. First, we note that restitution is mandated in theft cases. Tenn. Code Ann. § 40-20-116(a). The statute reads:

Whenever a felon is convicted of stealing or feloniously taking or receiving property, or defrauding another of property, the jury shall ascertain the value of the property, if not previously restored to the owner, and the court shall, thereupon, order the restitution of the property, and, in case this cannot be done, that the party aggrieved recover the value assessed against the prisoner, for which execution may issue as in other cases.

Tenn. Code Ann. § 40-20-116(a). Further, as we have previously noted, the Defendant's plea agreement specifically included payment of restitution to Jill Rich, and at the plea hearing, the trial court informed the Defendant that there was "restitution to be determined[,] and it will be placed on the judgment forms." In Moore, 814 S.W.2d at 383, this court concluded that "if a trial court, in fact, orders restitution as a condition of probation during the sentencing hearing, but the judgment omits such a condition, then the trial court retains authority to modify the defendant's judgment to reflect the payment of restitution under Rule 36." State v. Steve A. White, No. W2003-01947-CCA-R3-CD, 2004 WL 2381737, at *2 (Tenn. Crim. App. Oct. 25, 2004) (citing Moore, 814 S.W.2d at 383).

Despite the Defendant's arguments to the contrary, the trial court obviously ordered restitution as part of the Defendant's probation, and the original judgment forms did contemplate such a probation condition. The fact that the judgment forms did not include the amount of restitution, which had not yet been determined, or include the exact date of the restitution hearing is inconsequential. The forms included the notation that "Payment of fines, restitution, and costs, as a condition of supervision by the Tennessee Department of Probation and Parole, based upon the [D]efendant's ability to pay." Despite this notation, the original judgment forms did not include the restitution amount or the payment schedule, and therefore did not "decide[ ] and dispose[ ] of the whole merits of the case leaving nothing for the further judgment of the court." Richardson, 913 S.W.2d at 460. Thus, the judgment forms entered on August 20, 2020, did not carry the "gravity of a final judgment," and the trial court therefore retained jurisdiction to enter the restitution order and amended judgments on October 1, 2020. See Rodney Northern, 2010 WL 2852288, at *2. Because the August 20 filings were not final judgments, the Defendant was unable to appeal those judgments.

Having determined that the trial court retained jurisdiction to enter a restitution order and amended judgments, we must now determine whether the restitution order and amended judgments cured the defects in the original judgments, creating a final judgment from which the Defendant could appeal. The State likens the instant case to State v. William Chander Daniels, No. E2009-02172-CCA-R3-CD, 2010 WL 5343776, at *2 ("[B]etween the judgment of conviction, which references a later restitution hearing, and the order emanating from the hearing, the record contains a 'final judgment' and provides a sufficient basis to invoke our jurisdiction."), and David Allan Bohanon, 2013 WL

8

5777254, at *1. In those cases, the judgments of conviction explicitly noted a future pending restitution hearing, and the orders of restitution included explicit repayment terms. However, in the instant case, when the trial court was asked whether it needed to set the payment schedule, it stated only that the restitution would be paid through the probation office. The restitution order did not include payment terms and only noted that the Defendant was to pay $5,500 "through the Board of Probation and Parole during the [D]efendant's supervision." The amended judgments also did not contain terms of a payment schedule, noting only that "Judgments are amended to reflect that the Court ordered the Defendant to pay restitution of $5,500.00 after a restitution hearing on 09/25/2020. See Order of Restitution." Based on these facts, Rodney Northern seems more instructive to the instant case. In Rodney Northern, as noted above, the restitution order did not include payment terms as statutorily required and deferred establishing a payment schedule to the probation officer. 2010 WL 2852288, at *4. Consequently, in the instant case, we are unable to conclude that the restitution order and amended judgments constituted a final judgment from which the Defendant could appeal. We are without jurisdiction to address the merits of this appeal, and the appeal is accordingly dismissed. As a result, the case is still pending in the trial court.

## CONCLUSION

Because the record contains no final judgment from which the Defendant can appeal, we are without jurisdiction to address the instant appeal, and the appeal is dismissed.

_____
CAMILLE R. McMULLEN, JUDGE